**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| STACEY SEARS, JOEL AGUILERA, and AMBER SMITH, Individually and for Others Similarly Situated,<br><br>v.<br><br>WELLNOW URGENT CARE, P.C. | Case No. 1:23-CV-03544<br><br>Jury Trial Demanded<br><br>FLSA Collective Action<br>Rule 23 Class Action |

# THIRD AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT

## SUMMARY

1. Stacey Sears ("Sears"), Joel Aguilera ("Aguilera"), and Amber Smith ("Smith") (together, the "Named Plaintiffs") bring this class and collective action to recover unpaid overtime and other damages from WellNow Urgent Care, P.C. ("WellNow").

2. Sears worked for WellNow as a Licensed Practice Nurse (LPN) at WellNow's facility in Plattsburgh, New York.

3. Sears brings claims under the Fair Labor Standards Act ("FLSA") and class claims under the New York Labor Law ("NYLL").

4. Aguilera worked for WellNow as a traveling X-Ray technician based out of Chicago, Illinois.

5. Aguilera brings class claims under the Illinois Minimum Wage Law ("IMWL") and the Illinois Wage Payment and Collection Act ("IWPCA").

6. Smith worked for WellNow as a Clinic Shift Lead, at WellNow's facility in Olean, New York and Bradford, Pennsylvania.

7. Smith brings claims class claims under the Pennsylvania Minimum Wage Act ("PMWA") and the Pennsylvania Wage Payment and Collection Law ("PWPCL").

8. Like the Putative Class Members (as defined below), the Named Plaintiffs regularly worked more than 40 hours in a workweek.

9. But WellNow did not pay for all the hours they worked.

10. Instead, WellNow failed to provide the Named Plaintiffs and the Putative Class Members with *bona fide* meal breaks because WellNow required the Named Plaintiffs and the Putative Class Members to remain on-duty throughout their shifts and continuously subjects them to interruptions during their unpaid "meal breaks."

11. WellNow's meal break policies and practices violate the FLSA, NYLL, IMWL, IWPCA, PMWA, and PWPCL by depriving the Named Plaintiffs and the Putative Class Members compensation for all hours worked.

12. WellNow also automatically rounds the Named Plaintiffs' and the Putative Class Members' recorded time punches up to 7 minutes to the nearest quarter hour to WellNow's – not these employees' – predominant benefit.

13. WellNow's rounding policy violates the FLSA, NYLL, IMWL, IWPCA, PMWA, and the PWPCL by depriving the Named Plaintiffs and the Putative Class Members of overtime pay for all overtime hours worked.

14. Additionally, WellNow paid the Named Plaintiffs and certain Putative Class Members various non-discretionary bonuses[1] that it failed to include in their regular rates of pay for overtime purposes (WellNow's "bonus pay scheme").

[1] Non-discretionary bonuses, include mobile allowances, performance bonuses, satisfaction bonuses, sign on bonuses, bonuses, bonus GU, sign on bonuses, field leadership scorecard bonuses, healthcare worker bonuses, PERQ bonuses, productivity bonuses, provider scorecard bonuses, referral bonuses, referral bonus GU, shift incentive bonuses, and staff bonuses.

15. WellNow's bonus pay scheme violates the FLSA, NYLL, IMWL, IWPCA, PMWA, and PWPCL by depriving the Named Plaintiffs and the other Putative Class Members of the overtime wages of at least 1.5 times their regular rates of pay—based on all remuneration—they are owed for all hours worked in excess of 40 each workweek.

16. WellNow further failed to pay Sears and NY Putative Class Members on a weekly basis and instead pays them bi-weekly or semi-monthly in violation of NYLL § 191.

17. WellNow further does not provide Sears and NY Putative Class Members with accurate and compliant itemized wage statements in violation of NYLL § 195(3).

18. Named Plaintiffs and the Putative Class Members have set forth these claims in more detail below.

## Jurisdiction & Venue

19. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

20. The Court also has supplemental jurisdiction over the state-law subclass claims because these claims arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

21. This Court has general personal jurisdiction over WellNow because WellNow maintains its principal place of business and corporate headquarters in Chicago, Illinois.

22. Venue is proper because WellNow maintains its headquarters in Chicago, Illinois, which is in this District and Division. 28 U.S.C. § 1391(b)(1).

## Parties

23. Sears worked for WellNow as an LPN at the WellNow facility in Plattsburgh, New York from approximately May 2017 until September 2022.

24. Aguilera has worked for WellNow as a traveling x-ray technician, based out of Chicago, Illinois since approximately August 2015.

25. Smith worked for WellNow as a clinic shift lead from approximately November 2021 until December 2024, in Olean, New York until 2022 and based out of Bradford, Pennsylvania from 2022 until December 2024.

26. Sears's written consent was previously filed at Dkt. 1-1.

27. The FLSA Collective of similarly situated employees who have opted in by filing consent forms in this lawsuit has been defined as:

> **All hourly, non-exempt WellNow employees with direct patient care duties who either (1) received a meal period deduction and/or (2) were subject to WellNow's automatic time-rounding policy and/or (3) received a non-discretionary bonuses or shift differentials not included in their regular rate at any time during the 3 years prior to the filing of their consent form in this action ("FLSA Collective Members" or "FLSA Collective").**

28. Sears seeks to represent such a class under the NYLL pursuant to FED. R. CIV. P. 23.

29. The New York Class of similarly situated employees is defined as:

> **All hourly, non-exempt WellNow employees in New York who worked for WellNow in New York at any time within the past 6 years and 228 days[2] from the filing of this Lawsuit ("New York Class Members").**

30. Aguilera also seeks to represent such a class under the IMWL and IWPCA pursuant to FED. R. CIV. P. 23.

31. The putative class of similarly situated employees under the IMWL is defined as:

> **All hourly WellNow employees in Illinois at any time during the last 3 years through final resolution of this action (the "IMWL Class Members").**

---

[2] The statute of limitations was tolled 228 days due to Governor Cuomo's Executive Order 202.8 (2020) and subsequent orders Executive Orders 202.14, 202.28, 202.38, 202.48, 202.55.1, 202.60, and 202.67. In total, the Executive Orders were effective and implemented tolling for 228 days, from March 20th to November 3, 2020. *See McLaughlin v. Snowlift Inc.*, 71 Misc. 3d 1226(A) (Sup. Ct., Kings County 2021) (calculating that, together, the Executive Orders lasted 228 days).

32. The putative class of similarly situated employees under the IWPCA is defined as:

> **All hourly WellNow employees in Illinois who clocked out for a meal break and/or whose clock in/out times were automatically rounded, at any time during the last 10 years through final resolution of this action (the "IWPCA Class Members").**

33. The IMWL and IWPCA Class Members have also been collectively referred to as the Illinois Class Members.

34. Smith also seeks to represent such a class under the PMWA and the PWPCL pursuant to FED. R. CIV. P. 23.

35. The Pennsylvania Class of similarly situated employees is defined as:

> **All hourly WellNow employees who worked in, or were based out of, Pennsylvania during the last 3 years through final resolution of this action (the "Pennsylvania Class Members").**

36. The FLSA Collective Members, New York Class Members, Illinois Class Members, and Pennsylvania Class Members are collectively referred to as the "Putative Class Members."

37. The Putative Class Members can be readily ascertained and identified through WellNow's business and personnel records.

## COVERAGE UNDER THE FLSA

38. At all relevant times, WellNow was an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

39. At all relevant times, WellNow was an "enterprise" within the meaning of Section 3(r) of the FLSA. 29 U.S.C. § 203(r).

40. At all relevant times, WellNow was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials – such as

computers, cellphones, and personal protective equipment – that have been moved in or produced for commerce.

41. At all relevant times, WellNow has had an annual gross volume of sales made or business done of not less than $500,000 each year.

42. At all relevant times, the Named Plaintiffs and the Putative Class Members were WellNow's "employees" within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

43. At all relevant times, the Named Plaintiffs and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

44. At all relevant times and for the reasons described herein, the Named Plaintiffs and the Putative Class Members were deprived of overtime compensation for all hours worked during workweeks in which these employees work over 40 hours, violates the FLSA. 29 U.S.C. § 207(a) & (e).

**COVERAGE UNDER THE NYLL**

45. WellNow is a New York professional service corporation that maintains its corporate headquarters in Chicago, Illinois.

46. At all material times, the Named Plaintiffs and Putative Class Members are considered "employees" within the meaning of NYLL § 651(5).

47. At all material times, WellNow has been and is an "employer" within the meaning of NYLL § 651(6).

**COVERAGE UNDER ILLINOIS LAW**

48. At all relevant times, WellNow was Aguilera's and the other IMWL Class Members' "employer" within the meaning of the IMWL. 820 ILCS 105/3(c).

49. At all relevant times, Aguilera and the other IMWL Class Members were WellNow's "employees" within the meaning of the IMWL. 820 ILCS 105/3(d).

## COVERAGE UNDER PENNSYLVANIA LAW

50. At all relevant times, WellNow employed each Pennsylvania Class Member as its covered "employees" within the meaning of the PMWA. *See* 43 PA. STAT. § 333.103(h).

## FACTS

51. WellNow bills itself as "one of the fastest-growing providers of urgent medical care, telehealth and occupational medicine services in the United States, with more than 150 centers across Illinois, Indiana, Michigan, New York, and Pennsylvania." [3]

52. WellNow employs patient care workers, including the Named Plaintiffs and the Putative Class Members, to provide healthcare services and treat the patients in its various urgent care facilities.

53. For example, Sears worked for WellNow as an LPN at the WellNow urgent care facility in Plattsburgh, New York from approximately May 2017 until September 2022.

54. As an LPN, Sears's primary responsibilities include providing patient care to the patients at WellNow's facility in Plattsburgh, New York, such as monitoring patients, checking vitals, rooming patients, charting treatments, administering vaccines, conducting blood draws, administering medications, sterilizing equipment, and generally assisting doctors and other patient care staff.

55. Throughout her employment, WellNow classified Sears as non-exempt and paid her on an hourly basis.

56. Aguilera worked for WellNow as a traveling X-Ray technician based out of Chicago, Illinois.

---

[3] https://www.wellnow.com/about/ (last visited May 31, 2026).

57. As an X-Ray technician, Aguilera's primary responsibilities included picking up a company car from a designated clinic at the beginning of each shift, driving to second clinic (and sometimes a third), as assigned, and performing x-rays on patients.

58. Throughout his employment, WellNow classified Sears as non-exempt and paid her on an hourly basis.

59. Smith worked for WellNow as a Clinic Shift Lead, at WellNow's facility in Olean, New York and Bradford, Pennsylvania.

60. As a Clinic Shift Lead, Smiths primary responsibilities included completing patient intakes, gathering patient histories, taking patient vital signs, administering testing to patients, taking samples for testing, training new employees, and ordering clinic supplies.

61. Throughout her employment, WellNow classified Sears as non-exempt and paid her on an hourly basis.

62. Throughout their employment with WellNow, the Named Plaintiffs regularly worked more than 40 hours a workweek.

63. While exact job titles and job duties may differ, these employees are subjected to the same or similar illegal pay practices for similar work.

64. WellNow likewise classifies Putative Class Members as non-exempt from overtime and pays them on an hourly basis.

65. Throughout their employment, WellNow subjected the Named Plaintiffs to its common practice of excluding non-discretionary bonuses into the regular rate of pay for the purposes of calculating overtime wages.

66. The Named Plaintiffs and the Putative Class Members performed their jobs under WellNow's supervision, and using materials, equipment, and technology approved and supplied by WellNow.

67. WellNow requires the Named Plaintiffs and the Putative Class Members to follow and abide by common work, time, pay, meal break, and overtime policies and procedures in the performance of their jobs.

68. At the end of each pay period, the Named Plaintiffs and the Putative Class Members receive wages from WellNow that are determined by common systems and methods that WellNow selects and controls.

69. WellNow requires its hourly, non-exempt employees, including the Named Plaintiffs and the Putative Class Members, to record their hours worked using WellNow's timeclock system (WorkDay).

70. The Named Plaintiffs worked more than 40 hours in at least one workweek during the three years before this Complaint was filed.

71. Likewise, each Putative Class Member worked more than 40 hours in at least one workweek during the three years before this Complaint was filed.

72. When the Named Plaintiffs and the Putative Class Members worked more than 40 hours in a workweek, WellNow did not pay them overtime wages at 1.5 times their regular hourly rate for all overtime hours worked because (1) WellNow failed to include time these employees worked "off the clock" during their unpaid meal breaks in their total number of hours worked in a given workweek and/or (2) WellNow rounded these employees' recorded time punches to WellNow's primary benefit and/or (3) WellNow failed to include non-discretionary bonuses into the regular rate of pay for overtime calculation purposes.

## WellNow's Role as the Employer to the Putative Class Members

73. WellNow owns and/or operates all the urgent care facilities where the Named Plaintiffs and the Putative Class Members work.

74. WellNow controls and dictates the Named Plaintiffs' and the Putative Class Members' rates and methods of pay.

75. WellNow maintained control, oversight, and direction over the Named Plaintiffs and the Putative Class Members, including the promulgation and enforcement of policies affecting the payment of wages (including overtime compensation), meal breaks, performance standards, and other employment policies.

76. At all relevant times, WellNow maintained control, oversight, and direction of the Named Plaintiffs and the Putative Class Members, including, but not limited to, hiring, firing, disciplining, and other employment practices.

77. Indeed, WellNow dictates the hiring standards and all other employment policies and practices in place at its various urgent care facilities where the Named Plaintiffs and the Putative Class Members work.

78. WellNow has the authority to hire, fire, and discipline the employees working at its various urgent care facilities, including the Named Plaintiffs and the Putative Class Members.

79. WellNow controls the Named Plaintiffs' and the Putative Class Members' schedules and assignments.

80. WellNow controls the Named Plaintiffs' and the Putative Class Members' work.

81. WellNow requires the Named Plaintiffs and the Putative Class Members to follow WellNow's policies, procedures, and specifications.

82. The Named Plaintiffs' and the Putative Class Members' work must strictly adhere to the quality standards put in place by WellNow.

83. WellNow prohibits the Named Plaintiffs and the Putative Class Members from varying their job duties outside WellNow's guidelines and expectations and requires the Named Plaintiffs and the Putative Class Members to follow WellNow's policies, procedures, and directives.

84. WellNow's various urgent care facilities have centralized ownership, management, and/or human resources department.

85. Without the patient care work performed by the Named Plaintiffs and the Putative Class Members, WellNow would not be able to complete its business objectives of operating urgent care facilities across the country, including in New York, Illinois, and Pennsylvania.

86. The Named Plaintiffs and the Putative Class Members rely on WellNow for work and compensation.

87. The Named Plaintiffs and the Putative Class Members do not substantially invest in the tools, materials, and equipment required to complete their patient care job duties.

88. Rather, WellNow incurs the large-scale business and operating expenses like payroll, marketing, urgent care facilities, medical equipment and tools, etc. that the employees working at its various facilities, including the Named Plaintiffs and the Putative Class Members, need to perform their patient care jobs.

89. WellNow sets the Named Plaintiffs' and the Putative Class Members' work schedule.

90. WellNow maintains employment records for the employees working at its various urgent care facilities, including the Named Plaintiffs and the Putative Class Members.

91. In sum, the patient care employees that work in WellNow's various urgent care facilities, including the Named Plaintiffs and the Putative Class Members, are WellNow's employees.

**MEAL BREAK FACTS**

92. Throughout their employment, WellNow subjected the Named Plaintiffs to its common policy of requiring them to clock out for meal breaks even if they continue to perform work.

93. WellNow simply assumes the Named Plaintiffs and the Putative Class Members receive a *bona fide* meal break each shift they work.

94. But WellNow fails to provide the Named Plaintiffs and the Putative Class Members with *bona fide* meal periods.

95. Instead, WellNow requires the Named Plaintiffs and the Putative Class Members to remain on-duty and working throughout their shifts and continuously subjects them to interruptions during their unpaid meal periods.

96. Indeed, because of these constant work interruptions, the Named Plaintiffs and the Putative Class Members are not free to engage in personal activities during their unpaid meal periods.

97. Rather, during their unpaid "meal breaks," the Named Plaintiffs and the Putative Class Members are forced to substantially perform their regular patient care job duties and responsibilities.

98. Thus, the Named Plaintiffs and the Putative Class Members routinely spend their unpaid "meal breaks" performing patient care work for WellNow's – not these employees' – predominant benefit.

99. This unpaid time is compensable under the FLSA, NYLL, IMWL, IWPCA, PMWA, and PWPCL because WellNow knew, or should have known, that (1) the Named Plaintiffs and the Putative Class Members were performing unpaid work during their "meal breaks," (2) they were interrupted or subject to interruptions with work duties during any attempted meal period, (3) they were not completely relieved of all duties during their "meal breaks," (4) they entirely skipped the meal period due to work demands, (5) the meal period was less than 30 consecutive minutes, (6) they were not free to engage in personal activities during their meal periods because of constant interruptions, (7) they remained on WellNow's premises, and/or (8) they predominantly spent their unpaid meal periods performing their regular patient care duties for WellNow's predominant benefit.

100. WellNow failed to exercise its duty to ensure the Named Plaintiffs and the Putative Class Members were not performing work that WellNow did not want performed during their unpaid "meal breaks."

101. Despite accepting the benefits, WellNow did not pay the Named Plaintiffs and the Putative Class Members for the compensable work they performed during their "meal breaks."

102. Thus, under WellNow's uniform meal break policy, the Named Plaintiffs and the Putative Class Members are denied overtime pay for those on-duty "meal breaks" in workweeks in which they worked in excess of 40 hours in violation of the FLSA, NYLL, IMWL, IWPCA, PMWA, and PWPCL

103. WellNow knows the Named Plaintiffs and the Putative Class Members routinely perform work "off the clock" during their unpaid meal breaks because WellNow expects and requires these employees to do so.

104. But WellNow does not pay the Named Plaintiffs and the Putative Class Members for their routine "off the clock" work, including those hours worked in excess of 40 hours in a workweek, in violation of the FLSA, NYLL, IMWL, IWPCA, PMWA, and PWPCL.

**ROUNDING FACTS**

105. Further, in addition to failing to pay the Named Plaintiffs and the Putative Class Members for the work they perform during their unpaid "meal breaks," WellNow also subjects the Named Plaintiffs and the Putative Class Members to its uniform policy of automatically rounding these employees' recorded time punches up to 7 minutes to the nearest quarter hour to WellNow's – not these employees' – primary benefit.

106. Indeed, WellNow uniformly prohibits the Named Plaintiffs and the Putative Class Members from clocking in more than 7 minutes before their scheduled shift start and clocking out more than 7 minutes after their scheduled shift end to ensure the automatic rounding primarily benefits WellNow.

107. WellNow's uniform rounding policy violates the FLSA, NYLL, IMWL, IWPCA, PMWA, and PWPCL by depriving the Named Plaintiffs and the Putative Class Members of overtime

pay for all overtime hours worked because WellNow fails to include all work time in these employees' total hours worked.

**REGULAR RATE FACTS**

108. WellNow pays the Named Plaintiffs and certain Putative Class Members non-discretionary bonuses that it does not include in their regular rates of pay for overtime purposes. Thus, WellNow failed to pay the Named Plaintiffs and certain Putative Class Members at least 1.5 times their regular rates of pay—based on all remuneration—for all hours they work in excess of 40 in a workweek.

**NYLL SPECIFIC FACTS**

109. In addition to the claims described herein under the FLSA, the New York Class Member spend more than 25% of working time engaged in physical labor and are considered manual workers.

110. The physical labor tasks performed by the New York Class Members include, but are not limited to, cleaning, administering medications to patients, administering various treatments to patients, and lifting, carrying, and stocking items. The New York Class Members spend more than 25% of their workday performing such manual tasks.

111. WellNow does not pay the New York Class Members on a weekly basis.

112. Instead, WellNow pays the New York Class Members on a bi-weekly or semi-monthly basis.

113. As a result of the various violative policies described herein, WellNow fails to provide the Named Plaintiffs and Putative Class Members with accurate itemized wage statements.

114. When WellNow provides the New York Class Members with wage statements (if any), those wage statements fail to include accurate recitations of the actual amount of gross wages earned, deductions made to their wages (*i.e.*, they did not identify the automatic meal break deductions applied

by WellNow), net wages earned, regular rate calculations, number of regular hours worked, and/or number of overtime hours worked.

115. The wage statements that WellNow provides to the New York Class Members (if any) regularly under-report the actual wages earned and/or hours worked.

116. The New York Class Members have been injured and/or harmed by WellNow's wage statement violations because WellNow's conduct in providing inaccurate wage statements prevented the New York Class Members from knowing whether, and to what extent, they had been underpaid by WellNow.

## CLASS & COLLECTIVE ACTION ALLEGATIONS

117. The Named Plaintiffs reallege and incorporates all other paragraphs by reference.

118. The Named Plaintiffs bring this case as a class and collective action under § 216(b) of the FLSA and FED. R. CIV. P. 23.

119. The Named Plaintiffs and the Putative Class Members were victimized by WellNow's patterns, practices, and/or policies which deprived these employees' of overtime pay for all overtime hours work in willful violation of the FLSA, NYLL, IMWL, IWPCA, PMWA, and PWPCL.

120. Other Putative Class Members worked with the Named Plaintiffs and indicated they were paid in the same manner, performed similar work, and were subject to WellNow's same illegal pay and timekeeping policies.

121. Based on their experiences with WellNow, the Named Plaintiffs are aware WellNow's illegal practices were imposed on the Putative Class Members.

122. The Putative Class Members are similarly situated in all relevant respects.

123. Even if their precise job duties and locations might vary somewhat, these differences do not matter for the purposes of determining their entitlement to overtime compensation.

124. Therefore, the specific job titles or precise job locations of the various members of the Putative Class do not prevent class or collective treatment.

125. The Putative Class Members are similarly denied overtime compensation for all overtime hours worked when they work more than 40 hours in a workweek.

126. The back wages owed to the Named Plaintiffs and the Putative Class Members will be calculated using the same or similar records and using the same formula.

127. The Named Plaintiffs experiences are therefore typical of the experiences of the Putative Class Members.

128. The Named Plaintiffs have no interest contrary to, or in conflict with, the Putative Class Members that would prevent class or collective treatment.

129. Like each Putative Class Member, the Named Plaintiffs have an interest in obtaining the unpaid wages owed under state and/or federal law.

130. A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

131. Absent a class and collective action, many Putative Class Members will not obtain redress for their injuries, and WellNow will reap the unjust benefits of violating the FLSA, NYLL, IMWL, IWPCA, PMWA, and PWPCL.

132. Further, even if some of the Putative Class Members could afford individual litigation against WellNow, it would be unduly burdensome to the judicial system.

133. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the Putative Class Members, as well as provide judicial consistency.

134. The questions of law and fact that are common to each Putative Class Member predominate over any questions affecting solely the individual members.

135. Among the common questions of law and fact are:

a. Whether WellNow engaged in a policy and practice of time deductions for meal periods that were not *bona fide*, continuous, and uninterrupted in violation of the FLSA, NYLL, IMWL, IWPCA, PMWA, and PWPCL;

b. Whether WellNow's meal break deduction policy deprived the Named Plaintiffs and the Putative Class Members of pay for time worked during meal periods that were not *bona fide*, continuous, and uninterrupted in violation of the FLSA, NYLL, IMWL, IWPCA, PMWA, and PWPCL;

c. Whether WellNow failed to pay the Named Plaintiffs and the Putative Class Members overtime compensation for all hours worked in excess of 40 hours in a workweek, including hours worked "off the clock" during missed and interrupted meal breaks, in violation of the FLSA, NYLL, IMWL, IWPCA, PMWA, and PWPCL;

d. Whether WellNow knew, or had reason to know, the Named Plaintiffs and the Putative Class Members were requested, suffered, permitted, or allowed to work during their unpaid meal breaks in violation of the FLSA, NYLL, IMWL, IWPCA, PMWA, and PWPCL;

e. Whether WellNow engaged in a policy and practice of rounding the Named Plaintiffs' and the Putative Class Members' recorded time records up to 7 minutes to the nearest quarter hour;

f. Whether WellNow's rounding policy primarily benefits WellNow and not the Named Plaintiffs and the Putative Class Members;

g. Whether WellNow's rounding policy deprived the Named Plaintiffs and the Putative Class Members of overtime wages for all overtime hours worked in violation of the FLSA, NYLL, IMWL, IWPCA, PMWA, and PWPCL;

h. Whether WellNow paid the Named Plaintiffs and the Putative Class Members non-discretionary bonuses;

i. Whether WellNow failed to include these non-discretionary bonuses in determining the Named Plaintiffs and the Putative Class Members' regular rates of pay for overtime purposes;

j. Whether WellNow's bonus pay scheme deprived the Named Plaintiffs and the Putative Class Members of premium overtime wages they are owed under the FLSA, NYLL, IMWL, IWPCA, PMWA, and PWPCL;

k. Whether WellNow issued itemized wage statements to Sears and New York Class Members;

l. Whether Sears's and New York Class Members' itemized wage statements included accurate reflections of all hours worked, all wages due and owing;

m. Whether Sears and New York Class Members are considered manual workers and/or spend more than 25% of their work time engaged in physical labor tasks;

n. Whether WellNow pays Sears and New York Class Members on a weekly basis;

o. Whether WellNow's violations of the FLSA, NYLL, IMWL, IWPCA, PMWA, and PWPCL resulted from a continuing course of conduct;

p. Whether WellNow's decision not to pay the Named Plaintiffs and the Putative Class Members overtime compensation for all overtime hours worked was made in good faith;

q. Whether WellNow's failure to pay the Named Plaintiffs and the Putative Class Members all their earned overtime wages was the result of a *bona fide* dispute; and

r. Whether WellNow's violations of the FLSA, NYLL, IMWL, IWPCA, PMWA, and PWPCL were willful.

136. The Named Plaintiffs and the Putative Class Members sustained damages arising out of WellNow's illegal and uniform employment policies.

137. The Named Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class and/or collective action.

138. WellNow is liable under the FLSA, NYLL, IMWL, IWPCA, PMWA, and PWPCL for failing to pay the Named Plaintiffs and the Putative Class Members proper overtime compensation for all overtime hours worked when they work more than 40 hours in a workweek.

139. Consistent with WellNow's illegal meal break deduction policy, the Named Plaintiffs and the Putative Class Members were not paid overtime compensation for all overtime hours worked when they worked more than 40 hours in a workweek.

140. Consistent with WellNow's illegal automatic rounding policy, the Named Plaintiffs and the Putative Class Members were not paid overtime compensation for all overtime hours worked when they worked more than 40 hours in a workweek.

141. Consistent with WellNow's illegal bonus pay scheme, the Named Plaintiffs and the Putative Class Members were not paid 1.5 times their regular rates of pay—based on all remuneration—for all overtime hours worked when they worked more than 40 hours in a workweek.

142. As part of its regular business practices, WellNow intentionally, willfully and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA, NYLL, IMWL, IWPCA, PMWA and PWPCL with respect to the Named Plaintiffs and the Putative Class Members.

**ADDITIONAL NYLL CLASS ACTION ALLEGATIONS**

143. The Named Plaintiffs realleges and incorporates all other paragraphs by reference.

144. WellNow's conduct violates the NYLL and its implementing regulations, NYLL §§ 190, *et seq.* and 650, *et seq.*; 12 NYCRR Part 142-3.2.

145. The NYLL requires employers, like WellNow, to pay non-exempt employees, including NY Class Members, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked over 40 in a workweek. *See* NYLL §§ 190, *et seq.* and 650, *et seq.*; 12 NYCRR Part 142-3.2 and 142-3.14.

146. WellNow further fails to pay Sears and New York Class Members on a weekly basis and instead pays them bi-weekly or semi-monthly in violation of NYLL § 191.

147. WellNow failed to properly pay the New York Class Members their wages within seven calendar days after the end of the week in which they earned such wages.

148. Instead, WellNow uniformly paid the New York Class Members on a bi-weekly basis.

149. In this regard, WellNow failed to timely pay earned wages to the New York Class Members.

150. As manual workers, the New York Class Members are "dependent upon their wages for sustenance." *See People v. Vetri*, 309 N.Y. 401, 405 (1955).

151. Accordingly, WellNow's failure to timely pay wages owed to the New York Class Members constitutes an "especially acute injury" under NYLL § 191. *See Caul v. Petco Animal Supplies, Inc.*, No. 20-CV-3534 (RPK) (SJB), 2021 WL 4407856, at *4 (E.D.N.Y. Sep. 27, 2021) (citing *Vega v. CM & Assocs. Constr. Mgmt., LLC*, 175 A.D.3d 1144, 1146 [N.Y. 1st Dept. 2019])

152. WellNow further does not provide Sears and New York Class Members with accurate and compliant itemized wage statements in violation of NYLL § 195(3).

153. WellNow's uniform policies systemically deprived Sears and the NY Class Members of overtime wages for all overtime hours worked.

154. In violating the NYLL, WellNow acted willfully, without a good faith basis, and with reckless disregard of clearly applicable New York law.

155. Thus, WellNow's NYLL violations with respect to the NY Class Members were "willful" within the meaning of Section 198 of the NYLL. *See* NYLL § 198.

156. WellNow's unlawful conduct harmed the New York Class Members by depriving them of the premium overtime wages they are owed.

157. Accordingly, WellNow owes the New York Class Members the difference between the overtime wages actually paid and the proper overtime wages actually earned, plus interest on those amount, penalties, and attorneys' fees and costs. *See* NYLL §§ 198(4) and 663(1).

**ADDITIONAL ILLINOIS CLASS ACTION ALLEGATIONS**

158. The Named Plaintiffs realleges and incorporates all other paragraphs by reference.

159. The IMWL requires employers, like WellNow, to pay non-exempt employees, including Aguilera and the other IMWL Class Members, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked in excess of 40 in a workweek. 820 ILCS 105/4a.

160. WellNow further violated the IMWL by calculating overtime premiums using an unlawfully reduced regular rate that excluded non-discretionary bonuses and allowances paid to Aguilera and the other IMWL Class Members, even though those payments constituted remuneration for employment that must be included in the regular rate.

161. WellNow violated, and is violating, the IMWL by failing to pay Aguilera and the other IMWL Class Members overtime wages at rates of at least 1.5 times their regular rates of pay for all hours worked in excess of 40 in a workweek. *See* 820 ILCS 105/4a.

162. Accordingly, Aguilera and the IMWL Class Members are entitled to recover their unpaid overtime wages owed from the 3 years prior to the filing of this Complaint, treble damages, as well as monthly statutory damages on these amounts at the highest applicable rates, plus attorney's fees, costs, and expenses. *See* 820 ILCS 105/12(a).

163. The IWPCA requires employers, like WellNow, to pay employees, including Aguilera and the other IWPCA Class Members, for all the hours they work at the rate(s) agreed to by the parties.

164. During the course of their employment, WellNow agreed to pay Aguilera and each IWPCA Class Member an hourly rate for all the hours of work they performed.

165. Aguilera and each IWPCA Class Member accepted WellNow's offer.

166. But during the course of their employment, WellNow failed to pay Aguilera and the other IWPCA Class Members for all the time they worked at the hourly rates WellNow agreed to pay them because WellNow failed to include the time that they worked during their unpaid "meal breaks" in their total number of hours worked in a given workweek.

167. Thus, WellNow violated, and is violating, the IWPCA by failing to pay Aguilera and the other IWPCA Class Members all their earned wages (at the hourly rates WellNow agreed to pay them) for all the hours of work they performed for WellNow's benefit.

168. WellNow's unlawful conduct harmed Aguilera and the other IWPCA Class Members by depriving them of the earned wages they are owed.

169. Accordingly, Aguilera and the other IWPCA Class Members are entitled to recover their unpaid earned wages (at their agreed hourly rates), as well as monthly statutory damages on these

amounts at the highest applicable rates, plus attorneys' fees, costs, and expenses. *See* 820 ILCS 115/14(a).

**ADDITIONAL PENNSYLVANIA CLASS ACTION ALLEGATIONS**

170. The Named Plaintiffs realleges and incorporates all other paragraphs by reference.

171. The PMWA requires employers, like WellNow, to pay non-exempt employees, including Smith and Pennsylvania Class Members, overtime at rates not less than 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 a workweek. 43 PA. STAT. § 333.104(c); *see* 34 PA. CODE §§ 231.41-43.

172. WellNow violated, and is violating, the PMWA by employing non-exempt employees (Smith and the Pennsylvania Class Members) for workweeks in excess of 40 hours without paying them overtime wages at rates not less than 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 in a workweek, including hours worked off the clock. *See* 43 PA. STAT. § 333.104(c); *see also* 34 PA. CODE §§ 231.41-43.

**WELLNOW'S FLSA, NYLL, IMWL, IWPCA, PMWA, AND PWPCL VIOLATIONS WERE WILLFUL OR DONE IN RECKLESS DISREGARD FOR THE FEDERAL AND STATE LAWS**

173. The Named Plaintiffs realleges and incorporates all other paragraphs by reference.

174. WellNow knew the that patient care employees that work at its various urgent care facilities, including the Named Plaintiffs and the Putative Class Members, are its employees.

175. WellNow knew the Named Plaintiffs and the Putative Class Members are non-exempt employees entitled to overtime because WellNow uniformly classifies and pays them as such.

176. WellNow knew the Named Plaintiffs and the Putative Class Members were its hourly employees.

177. WellNow knew it was subject to the FLSA, NYLL, IMWL, IWPCA, PMWA, and PWPCL, including their respective overtime provisions.

178. WellNow knew the FLSA, NYLL, IMWL, IWPCA, PMWA, and PWPCL requires it to pay employees, including Sears and the Putative Class Members, overtime wages at rates not less than 1.5 times these employees' regular rates of pay—based on all remuneration—for all hours worked in excess of 40 hours in a workweek.

179. WellNow knew the Named Plaintiffs and the Putative Class Members worked more than 40 hours in a workweek because WellNow requires these employees to record their hours worked using its timeclock system.

180. WellNow knew it deducted 30 minutes from the Named Plaintiffs' and the Putative Class Members' work time for so-called "meal breaks" when these employees were unable to take a *bona fide* 30-minute meal break and did not record that they did so by clocking out on WellNow's timeclock system.

181. WellNow knew the Named Plaintiffs and the Putative Class Members regularly worked during their unpaid meal breaks because WellNow expects and requires them to do so.

182. WellNow knew the Named Plaintiffs and the Putative Class Members regularly spend their meal breaks substantially performing their regular patient care job duties for WellNow's predominant benefit.

183. Indeed, the Named Plaintiffs and the Putative Class Members routinely complained to WellNow's management and their supervisors about being forced to work through their unpaid "meal breaks."

184. WellNow knew that, as the Named Plaintiffs' and the Putative Class Members' employer, it has a duty to ensure these employees were not performing work that WellNow did not want performed during their unpaid "meal breaks."

185. WellNow knew the Named Plaintiffs and the Putative Class Members performed compensable work during their unpaid meal breaks.

186. Likewise, WellNow knew it rounded the Named Plaintiffs' and the Putative Class Members' recorded time punches to WellNow's – not these employees' – predominant benefit.

187. WellNow knew the FLSA, NYLL, IMWL, IWPCA, PMWA, and PWPCL required it to pay the Named Plaintiffs and the Putative Class Members for all hours these employees performed compensable work, including those hours worked during their unpaid "meal breaks."

188. WellNow knew it did not pay the Named Plaintiffs and the Putative Class Members for all hours these employees performed compensable work, including during their unpaid "meal breaks."

189. And WellNow knew it paid the Named Plaintiffs and the Putative Class Members under its bonus pay scheme.

190. WellNow knew that under its bonus pay scheme it failed to include non-discretionary bonuses in the Named Plaintiffs and the Putative Class Members' regular rates of pay.

191. Nonetheless, WellNow failed to pay the Named Plaintiffs and the Putative Class Members premium overtime compensation—based on all remuneration—for all overtime hours worked.

192. WellNow's failure to pay the Named Plaintiffs and the Putative Class Members premium overtime compensation—based on all remuneration—for all overtime hours worked was neither reasonable, nor was the decision not to pay these employees overtime compensation for all overtime hours worked made in good faith.

193. WellNow knowingly, willfully, and/or in reckless disregard carried out these illegal policies that deprived the Named Plaintiffs and the Putative Class Members of premium overtime pay for all overtime hours worked in violation of the FLSA, NYLL, IMWL, IWPCA, PMWA, and PWPCL.

194. WellNow knew, should have known, or showed reckless disregard for, whether the conduct described in this Complaint violated the FLSA, NYLL, IMWL, IWPCA, PMWA, and PWPCL.

195. The Named Plaintiffs and the FLSA Collective Members have been harmed as a direct and proximate result of WellNow's unlawful conduct because they have been deprived of wages owed for work that they performed and from which WellNow derived a direct and substantial benefit.

196. WellNow knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay the Named Plaintiffs and the FLSA Collective Members premium overtime compensation for all overtime hours worked.

197. WellNow's failure to pay the Named Plaintiffs and the FLSA Collective Members premium overtime compensation for all overtime hours worked was neither reasonable, nor was the decision not to pay these employees premium overtime compensation for all overtime hours worked made in good faith.

198. Accordingly, the Named Plaintiffs and the FLSA Collective Members are entitled to recover their unpaid overtime wages under the FLSA in an amount equal to 1.5 times their regular hourly rates of pay—based on all remuneration—plus an equal amount as liquidated damages, and attorney's fees and costs.

199. Likewise, Sears and the New York Class Members have been harmed as a direct and proximate result of WellNow's unlawful conduct because they have been deprived of wages owed for work that they performed and from which WellNow derived a direct and substantial benefit.

200. WellNow knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay Sears and the New York Class Members premium overtime compensation for all overtime hours worked.

201. WellNow's failure to pay Sears and the New York Class Members premium overtime compensation for all overtime hours worked was neither reasonable, nor was the decision not to pay these employees premium overtime compensation for all overtime hours worked made in good faith.

202. Thus, WellNow's violations of the NYLL were "willful" within the meaning of NYLL § 198.

203. Accordingly, Sears and the New York Class Members are entitled to recover their unpaid overtime compensation, plus liquidated damages, interest, penalties, and attorney's fees and costs.

204. Sears and Putative Class Members have been injured and/or harmed by WellNow's wage statement violations because WellNow's conduct in providing inaccurate wage statements prevented Sears and Putative Class Members knowing whether, and to what extent, they had been underpaid by WellNow.

205. Upon information and belief, Putative Class Members have lost out on the ability to recover unpaid wages, at least in part, due to relying on the inaccurate wage statements provided by WellNow and wrongly believing they were being paid fully, thereby failing to take corrective action against WellNow at an earlier time and losing out on a portion of their unpaid wages due and owing as a result of their applicable limitations period running.

206. As a result, WellNow is liable to Sears and each Putative Class Member up to the amount of $5,000 per person, together with attorneys' fees and costs.

207. WellNow does not pay Sears and/or Class Members on a weekly basis.

208. Instead, WellNow pays Sears and Class Members on a bi-weekly or semi-monthly basis.

209. WellNow thus violates NYLL § 191's frequency of pay requirements.

210. As a result, WellNow is liable to Sears and each Class Member for liquidated damages equal to 100% of the total amount of the wages to be due, as well as attorneys' fees, expenses, costs, and interest.

211. Likewise, Aguilera and the other Illinois Class Members are entitled to recover their unpaid earned wages (at their agreed hourly rates), as well as monthly statutory damages on these amounts at the highest applicable rates, plus attorneys' fees, costs, and expenses. *See* 820 ILCS 115/14(a).

212. WellNow owes Smith and the Pennsylvania Class Members the difference between the wages actually paid and the overtime wages actually earned, plus prejudgment interest, all available penalty wages and attorneys' fees and costs. *See* 43 PA. STAT. § 333.113.

## JURY DEMAND

213. The Named Plaintiffs demand a trial by jury.

## RELIEF SOUGHT

WHEREFORE, the Named Plaintiffs, individually and on behalf of the Putative Class Members, seeks the following relief:

a. An Order designating this lawsuit as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all FLSA Collective Members with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

b. An Order designating this lawsuit as a class action pursuant to FED. R. CIV. P. 23;

c. An Order appointing the Named Plaintiffs and their counsel to represent the interests of the FLSA Collective, New York Class, Illinois Class, and Pennsylvania Class;

d. An Order pursuant to Section 16(b) of the FLSA finding WellNow liable for unpaid back wages due to Sears and the FLSA Collective Members, plus liquidated damages in an amount equal to their unpaid compensation;

e. An Order pursuant to the NYLL finding WellNow liable for unpaid back wages due to Sears and the New York Class Members, plus liquidated damages in an amount equal to their unpaid compensation, statutory damages, as well as penalties;

f. An Order pursuant to the IMWL and IWPCA finding WellNow liable for unpaid back wages due to Aguilera and the Illinois Class Members, plus liquidated damages in an amount equal to their unpaid compensation, statutory damages, as well as penalties;

g. An Order pursuant to the PMWA and PWPCL finding WellNow liable for unpaid back wages due to Smith and the Pennsylvania Class Members, plus liquidated damages in an amount equal to their unpaid compensation, statutory damages, as well as penalties;

h. Judgment awarding the Named Plaintiffs and the Putative Class Members all unpaid wages, liquidated damages, penalties, and other damages available under the FLSA, NYLL, IMWL, IWPCA, PMWA, and PWPCL;

i. An Order awarding attorney's fees, costs, and expenses;

j. Pre- and post-judgment interest at the highest applicable rates; and

k. Such other and further relief as may be necessary and appropriate.

Dated: June 8, 2026

Respectfully submitted,

By: */s/ Michael A. Josephson*

Michael A. Josephson
Andrew W. Dunlap
**JOSEPHSON DUNLAP LLP**
5847 San Felipe St, Suite 2400
Houston, Texas 77057
713-352-1100 – Telephone
713-352-3300 – Fax
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch
**BRUCKNER BURCH PLLC**
5847 San Felipe St, Suite 2400
Houston, Texas 77057
713-877-8788 – Telephone
rburch@brucknerburch.com

Douglas M. Werman
Maureen A. Salas
**WERMAN SALAS P.C.**
77 W. Washington St., Suite 1402
Chicago, Illinois 60602
312-419-1008 – Telephone
dwerman@flsalaw.com
msalas@flsalaw.com

William C. (Clif) Alexander
Austin W. Anderson
**ANDERSON ALEXANDER PLLC**
101 N. Shoreline Blvd., Suite 610
Corpus Christi, Texas 78401
361-452-1279 – Telephone
361-452-1284 – Fax
clif@a2xlaw.com
austin@a2xlaw.com

**ATTORNEYS FOR PLAINTIFFS &**
**THE PUTATIVE CLASS MEMBERS**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served upon all counsel of record that have appeared via the Court's CM/ECF System on June 8, 2026.

*/s/ Michael A. Josephson*
Michael A. Josephson