IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STACEY SEARS, JOEL AGUILERA, and AMBER SMITH, Individually and for Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>WELLNOW URGENT CARE, P.C.,<br><br>Defendant. | Case No. 1:23-CV-03544<br><br>Hon. John F. Kness<br><br>FLSA Collective Action<br>29 U.S.C. § 216(b)<br><br>Rule 23 Class Action |

# PLAINTIFFS' UNOPPOSED MOTION AND MEMORANDUM IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT

Plaintiffs Stacey Sears, Joel Aguilera, and Amber Smith (collectively, "Named Plaintiffs"), individually and on behalf of all others similarly situated, respectfully move this Court, pursuant to Federal Rule of Civil Procedure 23(e) and 29 U.S.C. § 216(b), to: (1) provisionally certify, for settlement purposes only, the proposed FLSA Settlement Collective and the proposed Rule 23 Settlement Classes (the "Settlement Classes"); (2) preliminarily approve the Collective and Class Action Settlement Agreement (the "Agreement"); (3) appoint Named Plaintiffs as the Representative Plaintiffs for the Settlement Classes and Collective; (4) appoint Collective/Class Counsel under Rule 23(g); (5) approve the proposed Notices and notice plan; and (6) schedule a Final Approval Hearing. A copy of the Agreement is attached as Exhibit 1(A)-(G) to this Motion.[1] Defendant WellNow Urgent Care, P.C. ("WellNow") does not oppose this Motion.

[1] Exhibit 1 contains the Agreement and all of the documents to effectuate the settlement: 1(A)-Claim Form; 1(B) Class Notice for Class Members; 1(C) Class Notice for Opt-Ins; 1(D) Notice of Collective Action Settlement; 1(E) Reminder Notice; 1(F) Proposed Preliminary Approval Order; 1(G) Specific Waiver.

## TABLE OF CONTENTS

I. INTRODUCTION ....... 1
II. ISSUES PRESENTED ....... 1
III. FACTS AND PROCEDURAL HISTORY ....... 2
A. Factual Background ....... 2
B. Procedural History ....... **Error! Bookmark not defined.**
IV. SUMMARY OF SETTLEMENT TERMS ....... 5
A. The Gross Settlement Fund ....... 5
B. The Settlement Collective and Settlement Classes ....... 5
C. Settlement Allocation Formula ....... 6
D. Releases ....... 8
E. Enhancement Awards ....... 8
F. Claims Administration ....... 9
G. Notice Plan ....... 10
H. Attorneys' Fees and Costs ....... 13
V. ARGUMENT ....... 13
A. The Seventh Circuit's Dual-Track Analytical Framework ....... 13
B. The Court Should Provisionally Certify the Settlement Collective and Classes ....... 14
1. The FLSA Settlement Collective ....... 14
2. The Rule 23 Settlement Classes ....... 15
a. Numerosity. ....... 15
b. Commonality ....... 16
c. Typicality. ....... 18
d. Adequacy. ....... 19
e. Predominance. ....... 19
f. Superiority. ....... 20
C. The Proposed Settlement Is Within the Range of Possible Approval ....... 21
1. The Settlement Resolves a Bona Fide Dispute Under the FLSA ....... 21
2. The Seventh Circuit's Six-Factor Test Is Satisfied ....... 22

a. Strength of Plaintiffs' Case vs. Settlement Offer. ....................................................22

b. Complexity, Expense, and Length of Further Litigation. ........................................24

c. Amount of Opposition to the Settlement/Reaction of Class Members. ...................25

d. Opinion of Competent Counsel. ..............................................................................25

e. Stage of the Proceedings and Amount of Discovery Completed. ............................26

3. The Rule 23(e)(2) Codified Factors Are Satisfied ........................................................27

a. Adequate Representation. ........................................................................................27

b. Arm's-Length Negotiation. .......................................................................................27

c. Adequacy of Relief. ..................................................................................................28

d. Equitable Treatment. ................................................................................................28

D. Collective/Class Counsel Should Be Appointed Under Rule 23(g) ...................................29

E. The Proposed Notice Plan Should Be Approved ...............................................................30

F. The Court Should Schedule a Final Approval Hearing .......................................................31

VI. CONCLUSION ...........................................................................................................................31

## TABLE OF AUTHORITIES

**CASES**

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)....................15

*Anderson v. Mt. Clemens Pottery Co.*,
328 U.S. 680 (1946)....................**Error! Bookmark not defined.**

*Benoskie v. Kerry Foods, Inc.*,
No. 19-CV-684-PP, 2020 WL 5769488 (E.D. Wis. Sept. 28, 2020)....................9

*Burkholder v. City of Ft. Wayne*,
750 F. Supp. 2d 990 (N.D. Ind. 2010)....................14

*Burton v. IPREH, LLC*,
No. 23-cv-04207, 2025 WL 3707927 (C.D. Ill. Dec. 22, 2025)....................11

*Creative Montessori Learning Ctrs. v. Ashford Gear LLC*,
662 F.3d 913 (7th Cir. 2011)....................29

*Ervin v. OS Restaurant Services, Inc.*,
632 F.3d 971 (7th Cir. 2011)....................11

*Espenscheid v. DirectSat USA, LLC*,
705 F.3d 770 (7th Cir. 2013)....................14

*Gautreaux v. Pierce*,
690 F.2d 616 (7th Cir. 1982)....................22

*Gomez v. St. Vincent Health, Inc.*,

649 F.3d 583, 592 (7th Cir. 2011), as modified (Sept. 22, 2011....................19

*In re Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Injury Litig.*,
314 F.R.D. 580 (N.D. Ill. 2016)....................13

*In re Southwest Airlines Voucher Litig.*,
799 F.3d 701 (7th Cir. 2015)....................28

*Johnson v. Nat'l Tech., Inc.*,
Case No. 18-cv-462 (E.D. Wis. July 22, 2019)....................9

*Kaufman v. Am. Express Travel Related Servs. Co.*,
264 F.R.D. 438 (N.D. Ill. 2009); 877 F.3d 276 (7th Cir. 2017)....................13

*Kujat v. Roundy's Supermarkets Inc.*,
No. 1:18-CV-05326, 2021 WL 4551198 (N.D. Ill. Aug. 11, 2021)....................9

*Molinari v. Fin. Asset Mgmt. Sys., Inc.*,
No. 19-cv-00207, 2020 WL 4345418 (N.D. Ill. July 29, 2020)....................29

*Redman v. RadioShack Corp.*,
768 F.3d 622 (7th Cir. 2014)....................28

*Scott v. Dart*,
99 F.4th 1076 (7th Cir. 2024)....................8

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
463 F.3d 646 (7th Cir. 2006) ....................22

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011)....................16

*Weninger v. General Mills Operations, LLC*,
Case No. 2018-cv-321 (E.D. Wis. Apr. 18, 2019)....................9

*Wong v. Accretive Health, Inc.*,
773 F.3d 859 (7th Cir. 2014) ....................22

**STATUTES AND REGULATIONS**

29 U.S.C. § 207(e) ....................**Error! Bookmark not defined.**

29 U.S.C. § 216(b) ....................1

Illinois Minimum Wage Law, 820 Ill. Comp. Stat. 105/1 *et seq*...**Error! Bookmark not defined.**

Illinois Wage Payment and Collection Act, 820 Ill. Comp. Stat. 115/1 *et seq*...**Error! Bookmark not defined.**

New York Labor Law, N.Y. Lab. Law §§ 191, 195 ....................**Error! Bookmark not defined.**

Pennsylvania Minimum Wage Act, 43 Pa. Stat. § 333.101 *et seq.* **Error! Bookmark not defined.**

Pennsylvania Wage Payment and Collection Law, 43 Pa. Stat. § 260.1 *et seq*.. **Error! Bookmark not defined.**

**RULES**

Fed. R. Civ. P. 23....................*Passim*

## I. INTRODUCTION

This is a proposed settlement of a collective and class action lawsuit for unpaid overtime wages brought by Named Plaintiffs on behalf of themselves and all other similarly situated current and former hourly, non-exempt patient care employees of WellNow. After more than three years of litigation, including extensive motion practice regarding conditional certification, arbitration, written and deposition discovery, multiple rounds of discovery disputes, a court-supervised FLSA notice program, and arm's-length mediation before an experienced mediator, the Parties have reached a settlement that will resolve the claims of Named Plaintiffs, the opt-in collective members, and the putative Rule 23 class members in New York, Illinois, and Pennsylvania. The proposed settlement provides for a Gross Settlement Fund of $1,640,000.00 and resolves claims of current and former hourly, non-exempt WellNow patient care employees who were subject to WellNow's meal break policy, automatic rounding policy, and/or bonus pay scheme. Named Plaintiffs submit that the settlement is fair, reasonable, and adequate under both the FLSA's *bona fide* dispute standard and the Seventh Circuit's six-factor fairness analysis and satisfies all requirements for preliminary approval.

## II. ISSUES PRESENTED

By this Unopposed Motion, Named Plaintiffs ask the Court to:

(1) Provisionally certify, for settlement purposes only, the FLSA Settlement Collective pursuant to 29 U.S.C. § 216(b);

(2) Provisionally certify, for settlement purposes only, the Rule 23 Settlement Classes pursuant to Federal Rule of Civil Procedure 23(b)(3);

(3) Appoint Stacey Sears, Joel Aguilera, and Amber Smith as Named Plaintiffs for the FLSA Settlement Collective and Rule 23 Settlement Classes;

(4) Appoint Michael A. Josephson and Andrew Dunlap of Josephson Dunlap LLP; Austin W. Anderson and Clif Alexander of Anderson Alexander, PLLC; and Douglas M. Werman and Maureen A. Salas of Werman Salas P.C. as Collective/Class Counsel for settlement purposes under Rule 23(g);

(5) Preliminarily approve the Agreement attached as Exhibit 1, including the proposed allocation formula;

(6) Approve the proposed Claim Form, Notices, and notice plan attached to the Agreement as Exhibits 1(A) through 1(E)

(7) Set a date approximately 145 days following preliminary approval by which Named Plaintiffs must file a motion for final settlement approval and any motion for attorneys' fees, expenses, and costs; and

(8) Schedule a Final Approval Hearing.

## III. FACTS AND PROCEDURAL HISTORY

On June 6, 2023, Plaintiff Sears filed claims under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"), on behalf of herself and on behalf of other non-exempt employees as a class action pursuant to Federal Rule of Civil Procedure 23 and a collective action pursuant to 29 U.S.C. § 216(b), alleging WellNow fails to pay these workers for all hours worked. [2]*See* ECF No. 1. WellNow answered the Complaint on August 2, 2023, and filed an Amended Answer on August 10, 2023. ECF Nos. 20, 23.

On October 13, 2023, Plaintiff filed a First Amended Complaint, adding additional theories of liability. ECF No. 34. On December 18, 2023, Plaintiff moved for conditional certification of an FLSA collective pursuant to 29 U.S.C. § 216(b) and for the issuance of court-authorized notice. ECF No. 44. WellNow filed its opposition on January 8, 2024, including a cross-motion to exclude employees with arbitration agreements from the collective. ECF Nos. 58, 60. Plaintiff filed her reply (ECF No. 63), after which WellNow moved for leave to file a Sur Reply (ECF No. 66). Plaintiff opposed WellNow's request to file additional briefing. *See* ECF No. 67. The Court granted WellNow's motion for leave, and in the same order, authorized Plaintiff to file a Sur Reply to WellNow's Sur Reply. ECF No. 68. Plaintiff did so. ECF No. 71.

[2] This information is confirmed by the robust docket entries in this matter and the Declaration of Michael Josephson (Josephson Decl.) attached as Exhibit 2.

In the interim, on October 10, 2023, Plaintiff served Written Interrogatories and Requests for Production on WellNow. *See* ECF No. 82-1 and 82-2. WellNow served its objections and responses on November 15, 2023 (ECF No. 82-3 and 82-4), Supplemental Responses on December 19, 2023 (ECF No. 82-5), and Second Supplemental Responses on January 29, 2024 (ECF No. 82-6). After extensive conferrals, Plaintiff moved to compel discovery responses from WellNow. *See generally* ECF No. 82. WellNow responded (ECF No. 85) and Plaintiff sought leave to file a reply (ECF No. 86). This Court granted Plaintiff's discovery motion.[3] *See* ECF Nos. 88, 89.

Six days later, on July 17, 2024, the Court granted Plaintiff's Motion for Conditional Certification and authorized the issuance of court-approved notice. ECF No. 90. The Parties thereafter entered into a stipulation regarding the Notice Plan on August 6, 2024 (ECF No. 93), which the Court approved on January 7, 2025 (ECF No. 99). Pursuant to the Court-approved Notice Plan, the Claims Administrator mailed and distributed the court-approved notice to approximately 7,200 eligible employees. As a result of the notice program, approximately 2,681 individuals filed consent forms to join the FLSA collective.

After exchanging voluminous time and payroll data for the opt-in Plaintiffs, the Parties participated in formal mediation with Dennis Clifford on July 15, 2025, but were unable to reach a resolution. After the unsuccessful mediation, the Parties moved to lift the discovery stay and create a plan for opt-in discovery. *See* ECF No. 133, 135. After the Parties reached an impasse in their efforts to agree to a representative discovery plan—and after an in-person hearing on the issue—the Court entered an opt-in discovery plan and set a timeline for continued discovery. *See* ECF Nos. 139, 140.

[3] The Parties subsequently conferred and moved to stay formal discovery pending notice. *See* ECF No. 91.

On September 24, 2025, Plaintiff Sears requested leave to file a Second Amended Complaint. *See* ECF No. 142. WellNow opposed Plaintiff's motion (ECF No. 144) and Plaintiff sought leave to file a reply in support (ECF No. 145). After hearing, on October 22, 2025, the Court granted leave for Plaintiff to file a Second Amended Complaint, clarifying the original allegations related to meal break violations and adding additional claims related to regular rate violations. ECF No. 155. WellNow answered the amended complaint on November 12, 2025. ECF No. 159.

In January of 2026, the discovery disputes between the Parties reached a boiling point, with WellNow moving for protection from the deposition notice to its corporate representative (ECF Nos. 169, 170), Plaintiffs' Motion to Dismiss certain Opt-In Plaintiffs (ECF No. 171), and WellNow's Motion to Compel the written and oral discovery of certain Opt-In Plaintiffs (ECF Nos. 172, 174). Plaintiffs also moved to compel WellNow's written discovery responses, reciprocal discovery from Opt-In Plaintiffs, and WellNow's deposition pursuant to Federal Rule of Civil Procedure 30(b)(6). ECF No. 173. The Parties' motions were granted in part and denied in part. *See* ECF No. 180. Upon direction from the Court, both Parties filed additional motions to compel to fully address all outstanding discovery issues before the close of the discovery period. *See* ECF Nos. 189–95.

On March 13, 2026, after engaging in three years of hard-fought litigation and extensive written discovery and depositions, the Parties filed the Notice of Settlement with the Court. *See* ECF No. 197. As part of the Parties' settlement agreement, on June 8, 2026, Plaintiff filed the operative Third Amended Class and Collective Action Complaint (ECF No. 207), adding Joel Aguilera and Amber Smith as Named Plaintiffs and asserting claims under the FLSA, NYLL, IMWL, IWPCA, PMWA, and PWPCL.

## IV. SUMMARY OF SETTLEMENT TERMS

### A. The Gross Settlement Fund

The Parties have agreed to settle this matter for a Gross Settlement Fund of $1,640,000.00 ("Gross Settlement Fund"). *See* Ex. 1, ¶ 40. The following deductions will be made from the Gross Settlement Fund prior to distribution: (1) Service Payments to Named Plaintiffs (subject to Court approval), totaling $15,000.00; (2) Claims administration costs estimated to be $45,000; and (3) attorneys' fees in the amount of $574,000 and costs in the amount of $91,000 (subject to Court approval). *Id.* at ¶ 42. The remaining amount constitutes the "Net Settlement Fund," which will be distributed to eligible participants according to the allocation formula described in Section IV.C below. After making the above deductions from the Gross Settlement Fund, the Net Settlement Fund totals $915,000.

### B. The Settlement Collective and Settlement Classes

The Agreement covers two overlapping groups: the FLSA Settlement Collective and the Rule 23 Settlement Class, which is comprised of four sub-classes. *See* Ex. 1, ¶¶ 63, 76(a).

> **The FLSA Settlement Collective.** The proposed FLSA Settlement Collective consists of all hourly, non-exempt WellNow employees with direct patient care duties who previously submitted consent forms to opt into this action, and who worked between three years prior to the date they opted in to the litigation, and the Preliminary Approval Date.
>
> **The New York Class.** All hourly, non-exempt WellNow employees who worked for WellNow in New York at any time from June 6, 2017, through the Preliminary Approval Date ("New York Class Members").
>
> **The Illinois IMWL Class.** All hourly WellNow employees in Illinois at any time from June 8, 2023, through the Preliminary Approval Date ("IMWL Class Members").
>
> **The Illinois IWPCA Class.** All hourly WellNow employees in Illinois who clocked out for a meal break and/or whose clock-in/out times were automatically rounded, at any time from June 8, 2016, through the Preliminary Approval Date ("IWPCA Class Members").

> **The Pennsylvania Class.** All hourly WellNow employees who worked in, or were based out of, Pennsylvania at any time from June 8, 2023, through the Preliminary Approval Date ("Pennsylvania Class Members").

Because the FLSA Settlement Collective and the Rule 23 Settlement Classes encompass many of the same individuals, each person who is a member of both the Collective and a Settlement Class may participate in and receive payment from both as described below. A Class Member who is not an Opt-in Plaintiff must submit a Claim Form to receive a Settlement Payment. *Id.* at ¶ 67. A Class Member who does not submit a Claim Form but does not opt out will remain a member of the Settlement Class, will not receive a payment, and will release their state law claims. *Id.* at ¶ 118.

**C. Settlement Allocation Formula**

After calculating the Net Settlement Fund, the Claims Administrator will allocate the Net Settlement Fund among eligible participants using a points-based formula which fairly allocates the fund to each of the eligible participants based upon their class and collective status. Each participant's individual payment is determined by the total number of points assigned to them relative to all points assigned across all participants, applied against the Net Settlement Fund. *See id.*, at ¶ 76.

Points are assigned as follows: (i) Opt-in Plaintiffs are assigned two (2) points for each pay period during which they worked as an Hourly Employee at a WellNow corporate location between three years prior to the date they opted in to the litigation and the Preliminary Approval Date; (ii) New York Class Members who are not Opt-in Plaintiffs are assigned one (1) point for each pay period during which they worked as an Hourly Employee at a WellNow location in New York during the New York Class Period; (iii) IMWL Class Members who are not Opt-in Plaintiffs are assigned one (1) point for each pay period during which they worked as an Hourly Employee at a WellNow location in Illinois during the IMWL Class Period; (iv) IWPCA Class Members who

are not Opt-in Plaintiffs are assigned one (1) point for each pay period during which they worked as an Hourly Employee at a WellNow location in Illinois during the IWPCA Class Period; and (v) Pennsylvania Class Members who are not Opt-in Plaintiffs are assigned one (1) point for each pay period during which they worked as an Hourly Employee at a WellNow location in Pennsylvania during the Pennsylvania Class Period. Individuals will receive points for each of the applicable class categories of damages they qualify for. For example, an Opt-in Plaintiff who also qualifies for the IMWL and IWPCA classes will receive four (4) points. But an Opt-in Plaintiff who only qualifies for the IMWL class, would receive three (3) points. Ex. 2 at ¶ 33.

To calculate each Class Member and/or Opt-in Plaintiff's Allocated Amount, the Claims Administrator will: (i) determine the sum of total points for all Opt-in Plaintiffs and Class Members who are eligible to receive a payment; (ii) divide the Net Settlement Fund by that total to find the per-point value; and (iii) multiply each participant's individual point total by the per-point value. Based on the data known and subject to confirmation by the Claims Administrator, there are approximately 2,469,000 points available for allocation in connection with this settlement. *If*. Each Notice recipient will be informed of their estimated minimum Allocated Amount prior to the deadline to submit a Claim Form. *See* Ex. 1 at ¶ 77.

Pursuant to the Agreement, fifty percent (50%) of each individual settlement payment will constitute wages and will be subject to W-2 reporting and normal payroll tax withholdings under applicable state, local, and federal law. *Id.* at ¶ 80. The remaining fifty percent (50%) constitutes payment for liquidated damages, prejudgment interest, and statutory penalties, and will be reported, where required by law, on an IRS Form 1099. Settlement checks that are not deposited within 150 days of mailing will be voided. *Id.* In addition to the Gross Settlement Fund, WellNow will pay the employer's share of taxes on Settlement Payments to Claimants and Opt-in Plaintiffs.

*See id.*, at ¶ 81. Finally, funds that are not claimed will revert or remain with WellNow. *Id.* at ¶¶ 69–72.

**D. Releases**

Settlement Class Members who do not timely submit a valid Request for Exclusion will release all state law wage and hour claims asserted in the Third Amended Class Action Complaint—including claims under the NYLL, IMWL, IWPCA, PMWA, and PWPCL for failure to pay overtime wages, time rounding violations, regular rate violations, failure to include non-discretionary bonuses in the regular rate, meal break violations, wage statement violations, frequency-of-pay violations, and all related penalty claims—for the time period covered by the Settlement. Class Members who do not submit a Claim Form retain their FLSA claims. *See id.*, at ¶ 117.

Opt-in Plaintiffs who receive a Settlement Payment will additionally release all FLSA claims asserted in the Third Amended Class Action Complaint—including claims for failure to pay overtime wages, time rounding violations, regular rate violations, and failure to include non-discretionary bonuses in the regular rate—for the time period covered by the Settlement. *Id.* at ¶ 118.

Named Plaintiffs will also execute the Specific Release and Waiver (Exhibit 1(G) to the Agreement) in exchange for their Service Payments. The Specific Release and Waiver encompasses all wage and hour claims of any type arising before its execution date, known or unknown, related to any claim asserted in this lawsuit. *Id.* at ¶ 116.

**E. Enhancement Awards**

Subject to Court approval, each of the three Named Plaintiffs—Stacey Sears, Joel Aguilera, and Amber Smith—will receive a Service Payment of $5,000.00, for a total of $15,000.00, in

addition to any payment they may be entitled to receive as Opt-in Plaintiffs or Class Members. These awards compensate Named Plaintiffs for their substantial contributions to this litigation: each Named Plaintiff spent significant time working with counsel, reviewing and producing documents and in the case of Sears, responding to discovery, sitting for deposition, and assisting in the prosecution of claims on behalf of the putative class and collective. *See* Ex. 2, at ¶¶ 29–31. Named Plaintiffs also assumed the risks of financial and reputational harm inherent in serving as class and collective representatives, and will each execute a Specific Release and Waiver in exchange for these payments. *See* Ex. 1, ¶ 116.

The Court will be asked to approve these awards in connection with the Final Approval Hearing. *See Scott v. Dart*, 99 F.4th 1076, 1085–86 (7th Cir. 2024) (incentive awards to named plaintiffs are permitted so long as they comply with the requirements of Rule 23); *Benoskie v. Kerry Foods, Inc.*, No. 19-CV-684-PP, 2020 WL 5769488, at *5 (E.D. Wis. Sept. 28, 2020) (awarding a $5,000.00 service award and finding that amount was in line with service awards granted in other multi-plaintiff FLSA collective cases); *Johnson v. Nat'l Tech., Inc.*, Case No. 18-cv-462 (E.D. Wis., July 22, 2019) (awarding a service award of $8,500); *Weninger v. General Mills Operations, LLC*, Case No. 2018-cv-321 (E.D. Wis. April 18, 2019) (awarding a $5,000 service award). "Service awards are well suited in employment litigation because the plaintiffs assume the risk that future employers may look unfavorably upon them if they file suit against former employers." *Kujat v. Roundy's Supermarkets Inc.*, No. 1:18-CV-05326, 2021 WL 4551198, at *2 (N.D. Ill. Aug. 11, 2021) (awarding a $5,000.00 service award).

**F. Claims Administration**

The Parties will retain Simpluris, Inc. ("Simpluris" or "Claims Administrator") to serve as the independent, third-party Claims Administrator. *See* Ex. 1, at ¶ 109. The claims administration

fee will be paid out of the Gross Settlement Fund. Simpluris' responsibilities include: calculating individualized Allocated Amounts for each Opt-in Plaintiff and Class Member; obtaining and updating contact information; distributing the Notice Packet to Class Members and Opt-in Plaintiffs; receiving and processing Claim Forms, Requests for Exclusion, and objections; performing skip traces on undeliverable notices; reporting to the Parties on the status of administration; establishing and administering the settlement account; and distributing Settlement Payments, Service Payments, and attorneys' fees and costs after Final Approval. *Id.*

The notice and administration timeline under the Agreement is as follows. Within fourteen (14) calendar days of the entry of the Preliminary Approval Order, WellNow will transmit the initial twenty-five percent (25%) of the Gross Settlement Fund to the Settlement Account. *Id.* at ¶ 70. Within twenty-one (21) calendar days of the entry of the Preliminary Approval Order, WellNow will provide the Claims Administrator with a database containing contact and employment information for all Opt-in Plaintiffs and Class Members (the "Database"). *Id.* at ¶ 82. Within thirty (30) calendar days of receiving the Database, the Claims Administrator will mail and distribute the individualized Notice Packet to all Opt-in Plaintiffs and Class Members. *Id.* at ¶ 83. Each Notice recipient will have sixty-three (63) days from the date of mailing to: (a) submit a completed and signed Claim Form to receive a Settlement Payment; (b) submit a written Request for Exclusion to opt out of the Rule 23 Settlement Class; and/or (c) file a written objection to the terms of the Settlement. *Id.* at ¶ 22. No later than thirty (30) calendar days before the Claim Deadline, the Claims Administrator will send a Reminder Notice (Exhibit E) to Class Members who have not yet submitted a Claim Form or Request for Exclusion. *Id.* at ¶ 47.

**G. Notice Plan**

The proposed Notice documents, attached as Exhibits B, C, and D to the Agreement, notify potential participants of the pendency of this action, the nature of the claims asserted, the terms of the proposed Agreement, and their available options. *Id.* at ¶ 43. The Agreement provides for three distinct Notice documents: (1) Exhibit 1(B)—the Notice of Proposed Class Action Settlement for Class Members, directed to employees not currently in the FLSA Collective who must submit a Claim Form to participate; (2) Exhibit 1(C)—the Notice for Opt-in Plaintiffs who are also Class Members; and (3) Exhibit 1(D)—the Notice for current Opt-in Plaintiffs only, who will receive automatic payment without submitting a Claim Form. *Id.* at ¶¶ 43–45. Each Notice is individualized: recipients will be informed of their estimated Allocated Amount based on WellNow's time and payroll records.

As required by Rule 23(c)(2)(B), the Notices clearly and concisely set forth in plain language: (i) the nature of the action; (ii) the definition of the Settlement Classes and sub-classes; (iii) the claims, issues, and defenses; (iv) the right to enter an appearance through counsel; (v) the process for submitting a Claim Form to participate in the Settlement; (vi) the right to request exclusion from the Rule 23 Settlement; (vii) the deadline and manner for requesting exclusion (63 days from mailing); and (viii) the binding effect of a class judgment under Rule 23(c)(3). *See Burton v. IPREH, LLC*, No. 23-cv-04207, 2025 WL 3707927, at *8 (C.D. Ill. Dec. 22, 2025). The Notices will be distributed via first-class mail and email by the Claims Administrator. An Exhibit E Reminder Notice will be sent to Class Members who have not yet responded near the close of the claim period. The Putative Class Members are able to return their Claim Form by mail and email. *See* Ex. 1, at ¶ 87. This multi-channel approach constitutes the best notice practicable under the circumstances.

The Notice provides the following instructions to Putative Class Members regarding the objection process. *See id.*, at ¶ 92. To object to the Settlement Agreement, a Class Member must file any written objections with the Court and serve them upon Class Counsel and Defendant's Counsel on or before the Claim Deadline. *Id.*

> Any objection to the Settlement must be in writing, and must include: (1) the words "I object to the WellNow Class Action settlement"; (2) a statement of the objection(s) being asserted and a description of each objection; (3) if the objector intends to appear at the Fairness Hearing, the words "I intend to appear at the Fairness Hearing"; (4) a list of any witnesses who may be called to testify at the Final Approval Hearing, whether in person, by deposition, or affidavit; and (5) a list of any exhibits, and copies of same, which the objector may offer at the Final Approval Hearing. Written objections must also state the case name, the Class Member's full name and address, and the calendar year(s) during which the Class Member performed work for any Defendant as an Hourly Employee. All Objections must be submitted by the Claim Deadline. The date of submission is deemed to be the earlier of: (a) the date the Objection is deposited in the U.S. Mail, postage pre-paid, as evidenced by the postmark; or (b) the date of filing with the Court. A Class Member who submits a timely Request for Exclusion may not object to the Settlement.

*Id.*

The Notice also informs Class Members of the process for excluding themselves from the Settlement. *Id.* at ¶ 93. To exclude himself or herself from the Settlement, a Class Member must submit a timely written Request for Exclusion to the Claims Administrator that states: "I exclude myself from the WellNow Class Action settlement. I affirm that I was an employee of WellNow." The Request for Exclusion must include the Class Member's full name, address, and telephone number, and the Request for Exclusion must be signed by the Class Member. Any Class Member who submits a timely and valid Request for Exclusion Form shall NOT: (i) be bound by any orders or judgments entered in this Class Action Litigation; (ii) be entitled to benefits or relief under this Settlement Agreement; (iii) gain any rights by virtue of this Settlement Agreement; and/or (iv) be entitled to object to the Settlement or appeal from or challenge any order of the Court. *Id.*

If a fully completed and properly executed Request for Exclusion is not received by the Claims Administrator by the Claim Deadline, then that Class Member will be deemed to have forever waived his or her right to Opt Out of the Settlement Class. *Id.* Any Class Member who fails to Opt Out of the Settlement Class by filing a timely Request for Exclusion shall be bound by the terms of this Settlement. *Id.*

**H. Attorneys' Fees and Costs**

Subject to Court approval, and pursuant to the terms of the Agreement, Collective/Class Counsel will seek attorneys' fees not to exceed thirty-five percent (35%) of the Gross Settlement Fund ($574,000), plus reimbursement of their actual litigation costs and expenses up to $91,000. Collective/Class Counsel will request final approval of attorneys’ fees and costs at least fifteen (15) days prior to the objection deadline or at a date to be set by this Court. The Agreement provides that WellNow will not oppose a fee request up to thirty-five percent (35%) of the Gross Settlement Fund, plus costs. The Court will independently evaluate the reasonableness of any fee request at the Final Approval stage.

## V. ARGUMENT

**A. The Seventh Circuit's Dual-Track Analytical Framework**

When parties seek both preliminary approval of a hybrid settlement and certification of a settlement class and collective, the district court must undertake two essential inquiries: (1) conduct an independent class certification analysis with heightened attention to Rule 23’s requirements given the parties’ non-adversarial posture; and (2) determine whether the proposed settlement is within the range of possible approval. *See In re Nat’l Collegiate Athletic Ass’n Student-Athlete Concussion Injury Litig.*, 314 F.R.D. 580, 587 (N.D. Ill. 2016). Preliminary approval is a summary determination that the settlement is within the range of possible approval,

followed by a full fairness hearing at which class members may be heard. *Kaufman v. Am. Express Travel Related Servs. Co.*, 264 F.R.D. 438, 441–42 (N.D. Ill. 2009). At the preliminary stage, the court performs only a summary version of the full fairness inquiry. *Id.* at 442.

Because the Seventh Circuit has largely merged the certification standards applicable to FLSA collective actions and Rule 23 class actions, courts in this Circuit treat the entire hybrid proceeding as a single class action for analytical purposes. *See Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 772 (7th Cir. 2013) ("[T]here isn't a good reason to have different standards for the certification of the two different types of action, and the case law has largely merged the standards, though with some terminological differences."). The only meaningful procedural distinction is that FLSA collective members must affirmatively opt in to be bound, while Rule 23(b)(3) class members are included unless they opt out. *See id.*; *Ervin v. OS Restaurant Services, Inc.*, 632 F.3d 971, 975–76 (7th Cir. 2011).

## B. The Court Should Provisionally Certify the Settlement Collective and Classes

### 1. The FLSA Settlement Collective

The FLSA authorizes collective actions by one or more employees on behalf of themselves and other similarly situated employees, with each opt-in plaintiff required to file written consent. 29 U.S.C. § 216(b). In the settlement context, where the Parties have already reached agreement, the Court must still make a final certification determination before approving the collective action settlement. *See Burkholder v. City of Ft. Wayne*, 750 F. Supp. 2d 990, 994 (N.D. Ind. 2010).

The proposed FLSA Settlement Collective satisfies the Seventh Circuit's similarly situated standard. All members of the FLSA Settlement Collective are or were hourly, non-exempt WellNow patient care employees who were subject to the same common policies: (1) WellNow's meal break deduction policy, under which employees were required to clock out for meal breaks

while remaining on duty and subject to work interruptions; (2) WellNow's rounding policy, under which time punches were rounded up to seven (7) minutes to the nearest quarter hour to WellNow's benefit; and/or (3) WellNow's uniform bonus system, under which certain non-discretionary bonuses were systematically excluded from the regular rate of pay for overtime purposes. *See* Third Am. Compl. ¶¶ 27, 63–68, 93–108 (ECF No. 207). Each collective member's claim arises from these same common policies and is subject to the same legal analysis. While collective members worked at different WellNow facilities across multiple states, these geographic differences are immaterial—WellNow maintained centralized ownership, management, and human resources functions, and dictated uniform pay, timekeeping, and overtime policies across its network of urgent care centers. *See id.* ¶¶ 73–91. And this Court already determined, at least preliminarily, that Plaintiffs and the Collective Members were similarly situated when it granted Plaintiff's conditional certification motion and authorized the issuance of notice to the Putative Collective Members. *See* ECF No. 91. Further, for purposes of settlement only, WellNow agreed that conditional certification is appropriate.

**2. The Rule 23 Settlement Classes**

For the Rule 23 component, the Court must conduct a rigorous analysis to ensure each prerequisite of Rule 23(a) is satisfied, as well as one subsection of Rule 23(b). *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). The proposed Settlement Classes satisfies Rule 23(a) and Rule 23(b)(3).

**a. Numerosity.**

Rule 23(a)(1) requires that the class be so numerous that joinder of all members is impracticable. Although there is no magic number, joinder is generally considered impracticable when a class numbers at least 40 members. *Burton*, 2025 WL 3707927, at *4. WellNow employs

thousands of hourly, non-exempt patient care workers across more than 150 urgent care centers in New York, Illinois, and Pennsylvania. *See* ECF No. 207 ¶ 51. The following represents a good faith estimate of the number of collective/class members for each of the subclasses before the Court:

a. FLSA Collective Members: 2,681

b. New York Class Members: 5,522

c. Pennsylvania Class Members: 112

d. IMWL Class Members: 1,783

e. IWPCA Class Members: 1,963

This breakdown includes individuals who are current and former employees of WellNow and are part of overlapping classes. For instance, many of the FLSA Collective Members who worked in Illinois are part of the IMWL and/or IWPCA class. The same is true for the New York Class. The identities of the Settlement Class Members can be determined from WellNow's payroll and personnel records, *see id.* ¶ 37, and numerosity is clearly satisfied.

**b. Commonality.**

Rule 23(a)(2) requires questions of law or fact common to the class. "A common nucleus of operative fact is usually enough to satisfy the commonality requirement." *Burton*, 2025 WL 3707927, at *4 (citation omitted). What matters is "the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation." *Id.* (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). Here, Named Plaintiffs and the Settlement Class Members share a common nucleus of operative fact: all were WellNow's hourly, non-exempt patient care employees; all were subject to the same general meal break, rounding and bonus policies; all suffered the same type of injury (underpayment of overtime); and all rely on the same

general legal facts and theories for recovery under both the state and federal laws at issue. *See* ECF No. 207 ¶¶ 134–35. Specifically, Plaintiffs identified the following common questions of law and fact in their Third Amended Complaint:

a. Whether WellNow engaged in a policy and practice of time deductions for meal periods that were not bona fide, continuous, and uninterrupted in violation of the FLSA, NYLL, IMWL, IWPCA, PMWA, and PWPCL;

b. Whether WellNow's meal break deduction policy deprived the Named Plaintiffs and the Putative Class Members of pay for time worked during meal periods that were not bona fide, continuous, and uninterrupted in violation of the FLSA, NYLL, IMWL, IWPCA, PMWA, and PWPCL;

c. Whether WellNow failed to pay the Named Plaintiffs and the Putative Class Members overtime compensation for all hours worked in excess of 40 hours in a workweek, including hours worked "off the clock" during missed and interrupted meal breaks, in violation of the FLSA, NYLL, IMWL, IWPCA, PMWA, and PWPCL;

d. Whether WellNow knew, or had reason to know, the Named Plaintiffs and the Putative Class Members were requested, suffered, permitted, or allowed to work during their unpaid meal breaks in violation of the FLSA, NYLL, IMWL, IWPCA, PMWA, and PWPCL;

e. Whether WellNow engaged in a policy and practice of rounding the Named Plaintiffs' and the Putative Class Members' recorded time records up to 7 minutes to the nearest quarter hour;

f. Whether WellNow's rounding policy primarily benefits WellNow and not the Named Plaintiffs and the Putative Class Members;

g. Whether WellNow's rounding policy deprived the Named Plaintiffs and the Putative Class Members of overtime wages for all overtime hours worked in violation of the FLSA, NYLL, IMWL, IWPCA, PMWA, and PWPCL;

h. Whether WellNow paid the Named Plaintiffs and the Putative Class Members non-discretionary bonuses;

i. Whether WellNow failed to include these non-discretionary bonuses in determining the Named Plaintiffs and the Putative Class Members' regular rates of pay for overtime purposes;

j. Whether WellNow's bonus pay scheme deprived the Named Plaintiffs and the Putative Class Members of premium overtime wages they are owed under the FLSA, NYLL, IMWL, IWPCA, PMWA, and PWPCL;

k. Whether WellNow issued itemized wage statements to Sears and New York Class Members;

l. Whether Sears's and New York Class Members' itemized wage statements included accurate reflections of all hours worked, all wages due and owing;

m. Whether Sears and New York Class Members are considered manual workers and/or spend more than 25% of their work time engaged in physical labor tasks;

n. Whether WellNow pays Sears and New York Class Members on a weekly basis;

o. Whether WellNow's violations of the FLSA, NYLL, IMWL, IWPCA, PMWA, and PWPCL resulted from a continuing course of conduct;

p. Whether WellNow's decision not to pay the Named Plaintiffs and the Putative Class Members overtime compensation for all overtime hours worked was made in good faith;

q. Whether WellNow's failure to pay the Named Plaintiffs and the Putative Class Members all their earned overtime wages was the result of a bona fide dispute; and

r. Whether WellNow's violations of the FLSA, NYLL, IMWL, IWPCA, PMWA, and PWPCL were willful.

*Id.* at ¶ 135(a)–(r).

**c. Typicality.**

Rule 23(a)(3) requires that the claims of the named plaintiffs be typical of the claims of the class. "A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and [the] claims are based on the same legal theory." *Burton*, 2025 WL 3707927, at *5 (citation omitted). All of the Named Plaintiffs were employees of WellNow who were subject to the same WellNow practices and policies and rely on the same facts and legal theories as the collective and class members they seek to represent. Each Named Plaintiff's claims are typical of those of their respective Settlement Classes.

**d. Adequacy.**

Rule 23(a)(4) requires that the named plaintiffs and their counsel "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy inquiry essentially asks if the named plaintiffs and their counsel have any conflicts of interest with other class members and if proposed class counsel will adequately represent the class's interests. *Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011), as modified (Sept. 22, 2011); *Willis v. Universal Intermodal Servs., Inc.*, ___ F. Supp. 3d ___, ___, No. 21 C 1716, 2026 WL 1810320, at *5–6 (N.D. Ill. June 24, 2026).

Named Plaintiffs have no conflicts of interest with the Settlement Class Members. Each Named Plaintiff's interests are aligned with those of the class members they represent: all seek recovery of overtime wages withheld pursuant to WellNow's same policies and alleged practices. Only conflicts that are fundamental to the suit and go to the heart of the litigation prevent a plaintiff from meeting the adequacy requirement. *See Willis*, 2026 WL 1810320, at *5–6. No such fundamental conflict exists here. Named Plaintiffs actively participated in the prosecution of this litigation, spent significant time assisting counsel, and provided declarations, deposition testimony or legal assistance supporting the class claims. Ex. 2 at ¶¶ 29–31.

Additionally, Collective/Class Counsel are highly experienced in wage and hour class and collective actions and have vigorously prosecuted this case for more than three years, obtaining conditional certification over WellNow's fierce opposition and conducting extensive merits and class discovery. *See infra* Section V.D. (Rule 23(g) analysis); *see* Ex. 2, ¶¶ 3–20.

**e. Predominance.**

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members." FED. R. CIV. P. 23(b)(3). "The

Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. "A common question is one for which 'the same evidence will suffice for each member to make a prima facie showing' of the elements of the underlying cause of action." *Burton*, 2025 WL 3707927, at *5 (citation omitted).

The questions common to all Settlement Class Members—whether WellNow's meal break deduction policy failed to provide bona fide breaks, whether the rounding policy primarily benefitted WellNow, whether WellNow excluded non-discretionary bonuses from the regular rate, and whether those practices violated applicable state wage and hour laws—will be answered using the same evidence (WellNow's uniform written policies, its timekeeping and payroll systems, and its WorkDay records). WellNow would raise similar defenses[4] in response to each class member's claims and those defenses likewise generate common answers. The computation of individual damages does not defeat predominance where, as here, liability turns on common proof. Individual damages calculations will use the same formula and methodology applied uniformly to WellNow's payroll and time records. Predominance is satisfied.

**f. Superiority.**

Rule 23(b)(3) also requires that "a class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3). "Superiority was satisfied where individual litigation would involve substantial costs to recover potentially minimal damages." *Burton*, 2025 WL 3707927, at *5. The potential individual recovery for each Settlement Class Member—while meaningful when aggregated across the class—would be too small to justify the cost and burden of individual litigation. Most class members would have little practical

[4] WellNow maintains that any off-clock work during meal breaks was *de minimis* and non-compensable, that the rounding policy was neutral over time, and that its policies and procedures did not violate federal or state law. Further WellNow relied on many of the same documents and arguments to defend against the claims at issue during the discovery process.

ability to pursue their claims individually. A class action is superior to individual litigation, which would involve duplicative proceedings, inconsistent outcomes, and judicial inefficiency. No Settlement Class Member has filed a separate individual action asserting the claims at issue, and there is no countervailing reason to deconsolidate these claims. Concentrating the litigation in this forum promotes judicial economy and parity among the claims of Settlement Class Members. Superiority is therefore satisfied.

### C. The Proposed Settlement Is Within the Range of Possible Approval

Preliminary approval requires a determination that the proposed settlement is within the range of possible approval. *Kaufman*, 264 F.R.D. at 441. "Courts generally approve settlements [that] are the product of contentious arm's-length negotiations, which were undertaken in good faith by counsel and where serious questions of law and fact exist such that the value of an immediate recovery outweighs the mere possibility of further relief after protracted and expensive litigation." *Burton*, 2025 WL 3707927, at *6. The proposed settlement readily satisfies this standard, as set forth below.

#### 1. The Settlement Resolves a Bona Fide Dispute Under the FLSA

Before approving an FLSA settlement, the Court must be satisfied that the settlement resolves a bona fide dispute between the parties. *See Burkholder*, 750 F. Supp. 2d at 994; *Burton*, 2025 WL 3707927, at *6. A genuine, bona fide dispute exists in this case. WellNow disputes liability on multiple grounds: WellNow maintains that it pays for up to 20 minutes of time during meal breaks and that any work performed by employees during any unpaid portion of their meal breaks was de minimis and therefore non-compensable under the FLSA; that individualized proof would be required to establish that any given employee was actually interrupted and performed work during a particular break; that the rounding policy did not exist and to the extent that it was

ever used during any of the applicable class periods, it was neutral or beneficial to employees when measured over a representative period; and that the challenged bonuses were included in the regular rate calculations and to the extent that they don't, it is because they do not qualify as "non-discretionary" under the FLSA's regular-rate provisions. WellNow also contested, absent settlement, whether this case is appropriate for class or collective treatment, given the facts developed during discovery and the difficulty of proving off-clock work on a class- or collective-wide basis without individualized inquiries into each employee's experience during each shift. Named Plaintiffs dispute each of these defenses and maintain that WellNow's common policies establish liability and damages on a class-wide basis. These good-faith disputes over liability, damages, and class certification confirm that this settlement resolves a genuine controversy, rather than an employer paying to avoid nuisance litigation. *See Burkholder*, 750 F. Supp. 2d at 994–95.

**2. The Seventh Circuit's Six-Factor Test Is Satisfied**

The Seventh Circuit has identified six factors for evaluating whether a proposed settlement is fair, reasonable, and adequate, as established in *Gautreaux v. Pierce*, 690 F.2d 616, 631 (7th Cir. 1982), and consistently applied in subsequent decisions: (1) the strength of the plaintiffs' case versus the settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of class members; (5) the opinion of competent counsel; and (6) the stage of the proceedings and amount of discovery completed. *See Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014). Each factor is addressed below.

**a. Strength of Plaintiffs' Case vs. Settlement Offer.**

The strength of plaintiffs' case compared to the settlement offer is often considered the most important factor. *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006). Courts "should begin by quantifying the net expected value of continued litigation to

the class, considering the range of possible outcomes and ascribing a probability to each point on the range." *Kaufman*, 877 F.3d at 282.

Named Plaintiffs maintain that their claims largely have merit. WellNow's meal break deduction policy, rounding policy, and bonus pay scheme are documented in discovery and WellNow's own records. Additionally, the Court has already conditionally certified the FLSA Collective over WellNow's opposition, a ruling that reflects the Court's preliminary finding that the claims are suitable for collective treatment. At the same time, Named Plaintiffs recognize the substantial risks of continued litigation. WellNow has raised colorable defenses which it has aggressively asserted, including the *de minimis* defense, the difficulty of proving off-clock work and its compensability across hundreds of patient care workers and more than 150 facilities, and the individualized-inquiry arguments that could defeat class or collective certification at a more rigorous stage of review. Discovery also confirmed based on a review of the documents produced by WellNow, the number of deductions taken from Plaintiff and the Collective/Class Members' pay were limited and that most workers were compensated for at least a 20-minute meal period. *See* Ex. 2, ¶¶ 25–28. Likewise, the evidence did not support a strong rounding claim once it was possible to review the real or "raw" time with the rounded time. *Id.* Plaintiffs recognize the very real possibility they would lose these claims at the summary judgment stage or face decertification. *Id.* Similarly, discovery confirmed that while regular rate problems exist, the damages caused by the miscalculations were limited in part because most of the workers at issue worked less than 40 hours a week. *Id.* at ¶ 27.

WellNow also contests the damages calculations. Even if Named Plaintiffs were to prevail at trial, the class-wide damages award would be uncertain, and the full value of the potential

recovery would be sharply discounted by the probability of partial or complete failure at class certification, trial, or on appeal.

The proposed settlement provides an immediate, certain recovery for class and collective members that represents a significant proportion of their potential estimated damages. And the recovery provided is robust. Under the Agreement, the Settlement Class Members will receive a net amount between $30 to $150 (net) on average depending on where and when they worked. *See* Ex. 2, ¶ 35. Based on each individual's typical schedule and the short duration of many workers' employment, the net amount offered by this settlement is demonstrably fair. This is especially true given the records exchanged during mediation and the discovery process revealed that on average, workers were owed an average of $462.14 (gross) and inclusive of favorable assumptions, penalties and claims. *See id.* Given the risks of continued litigation, the proposed settlement is well within the range of possible approval on this factor.

**b. Complexity, Expense, and Length of Further Litigation.**

This factor weighs strongly in favor of settlement. Even setting aside the inherent uncertainty of trial, continued litigation in this case would require significant additional expenditure of time and resources. The Parties would need to complete expert discovery and damages analysis for a nationwide FLSA collective and state law classes covering New York, Illinois, and Pennsylvania; litigate Rule 23 class certification motions (which WellNow has signaled it will contest vigorously based on individualized issues); and if class certification is granted, litigate dispositive motions, prepare for trial across multiple claims under different state and federal regimes, and potentially face one or more appeals regarding class certification, the merits, or both. As the record in this matter accurately reflects, each stage of this litigation has

been hard fought and required significant judicial intervention. *See* ECF Nos. 87–90, 155, 180; *see also supra*, § 3.

"Even in a smaller scale class action like the one at issue here, litigation expenses can balloon if the claim goes to trial. Regardless of whether [Plaintiffs have] high confidence that [they] would prevail quickly at trial, the inherent risk of proceeding to trial combined with the financial cost of doing so justifies the difference between the potential value of the claims and the payout under the Settlement Agreement." *Burton*, 2025 WL 3707927, at *7. Settlement avoids these years of additional delay and allows class and collective members to receive compensation now rather than awaiting an uncertain outcome potentially many years in the future. There can be little doubt that absent settlement, the Parties would continue to aggressively represent their clients through trial and appeal.

**c. Amount of Opposition to the Settlement/Reaction of Class Members.**

"The third and fourth factors cannot be evaluated until notice is sent to class members." *Burton*, 2025 WL 3707927, at *7. As of the date of this filing, no members of the putative class have filed any objections to the settlement. Named Plaintiffs anticipate a positive response from class members given the substantial, certain recovery offered. The individualized Notice, which will inform each potential member of their estimated minimum recovery, is designed to maximize meaningful participation in the settlement. Named Plaintiffs will report on the amount of opposition to the settlement, if any, and the reaction of class members at the Final Approval Hearing.

**d. Opinion of Competent Counsel.**

The Court may consider that experienced class counsel concluded the settlement was fair, reasonable, and adequate. *Burton*, 2025 WL 3707927, at *7. Collective/Class Counsel—

experienced wage and hour practitioners at three firms who have collectively litigated scores of FLSA and state law class and collective wage actions—have evaluated the merits of the claims and defenses, reviewed the available liability and damages evidence, assessed WellNow's ability to withstand a larger judgment, and independently concluded that the proposed settlement is fair, reasonable, and adequate. *See* Ex. 2, ¶¶ 37–39. This conclusion reflects their experienced judgment, formed after more than three years of zealous advocacy on behalf of Named Plaintiffs and the Settlement Class, that the proposed settlement provides an appropriate recovery in light of the risks of continued litigation. *Id.*

**e. Stage of the Proceedings and Amount of Discovery Completed.**

"The sixth factor does not weigh against preliminary approval where the parties had engaged in partial discovery during which they were able to evaluate the relative strength of their arguments." *Burton*, 2025 WL 3707927, at *7. This case has been pending since June 6, 2023. Over more than three years of litigation, the Parties have engaged in substantial corporate and party discovery, including WellNow's production of class-wide payroll, timekeeping, and policy records; depositions of Named Plaintiffs and discovery Plaintiffs; extensive motion practice before the Court and Magistrate Judge Fuentes regarding the scope and timing of discovery; the Court's grant of conditional certification over WellNow's vehement opposition; the amendment of the complaint to include additional claims and parties; the filing of numerous consent forms by opt-in plaintiffs; multiple motions to compel and/or motions for protection filed by both Parties; multiple joint status conferences and hearings before the Court—both in person and remote; and extensive informal data exchange in furtherance of the settlement negotiations. *See supra* at § III.

The Parties' respective litigation postures, and the risks and potential value of the claims, are well understood by Collective/Class Counsel, who are fully informed as to the factual and legal landscape of this dispute. This factor strongly supports approval.

**3. The Rule 23(e)(2) Codified Factors Are Satisfied**

The 2018 amendments to Rule 23 codified four factors that the Court must consider in approving a settlement: (A) whether the class representatives and class counsel have adequately represented the class; (B) whether the proposal was negotiated at arm's length; (C) whether the relief provided for the class is adequate; and (D) whether the proposal treats class members equitably relative to each other. FED. R. CIV. P. 23(e)(2). These factors operate alongside the Seventh Circuit's six-factor test. *See Wong*, 773 F.3d at 863. Each factor is satisfied here.

**a. Adequate Representation.**

Named Plaintiffs and Collective/Class Counsel have adequately represented the Settlement Collective and Classes throughout this litigation. Named Plaintiffs are knowledgeable about the claims, have participated actively in the prosecution of this action, and have no conflicts of interest with the class members they represent. *See* Section V.B.2.d. Collective/Class Counsel have vigorously advocated for Named Plaintiffs and the putative class over more than three years of litigation, obtained conditional certification, pursued class discovery, and engaged in successful arm's-length settlement negotiations. *See* Section V.D.

**b. Arm's-Length Negotiation.**

The settlement was the product of arm's-length negotiations conducted in good faith by experienced counsel, after approximately three (3) years of litigation, facilitated by experienced wage and hour mediator Dennis Clifford after a full day mediation on July 15, 2025, and countless follow up settlement discussions with and without the mediator. The involvement of a professional

mediator provides strong evidence of arm's-length dealing and the absence of collusion. *See Burton*, 2025 WL 3707927, at *6. Even with the assistance of an experienced mediator, this matter did not resolve at mediation. Instead, the Parties resumed litigation while maintaining open lines of communication regarding resolution. The Parties participated in numerous follow-up calls and email exchanges with Mr. Clifford regarding their ongoing efforts to resolve this matter and multiple settlement proposals were exchanged, reviewed, and ultimately rejected before the Parties reached the agreement currently before this Court. *See* Ex. 2, ¶¶ 21–24. It was not until March of 2026 that the Parties ultimately agreed on the general terms of a resolution that have been incorporated into the Agreement before the Court.

**c. Adequacy of Relief.**

As set forth above, the relief provided by the settlement is more than adequate, considering the costs, risks, and delay of continued litigation; and the effectiveness of the proposed method of distributing relief. Class Members who are *not* Opt-in Plaintiffs must submit a Claim Form to receive a payment. Opt-in Plaintiffs receive automatic payment without needing to submit a Claim Form. The Agreement provides for individualized notice that informs each potential participant of their estimated Allocated Amount, as well as a Reminder Notice (Exhibit (1)(E)) to encourage participation. And the Court will independently evaluate the reasonableness of Class Counsel's fee request at the Final Approval stage. *See In re Southwest Airlines Voucher Litig.*, 799 F.3d 701, 712–13 (7th Cir. 2015); *Redman v. RadioShack Corp.*, 768 F.3d 622, 637 (7th Cir. 2014).

**d. Equitable Treatment.**

The settlement treats all members of the Settlement Collective and each Settlement Class equitably relative to one another. Each member's recovery is calculated using the same points-based formula applied uniformly to WellNow's payroll records. Opt-in Plaintiffs automatically

receive a double-weighted point value (2 points per pay period) reflecting their active participation in the FLSA Collective and the additional FLSA claims they have released. No class member is treated preferentially or on terms more favorable than other similarly situated members, except that Named Plaintiffs receive Service Payments to compensate for the additional burdens, risks, and services they provided as class and collective representatives. *See Scott*, 99 F.4th at 1085–86.

**D. Collective/Class Counsel Should Be Appointed Under Rule 23(g)**

A court that certifies a class must appoint class counsel. Fed. R. Civ. P. 23(g)(1). In appointing class counsel, the court must consider: (i) the work counsel has done in identifying or investigating potential claims; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class. FED. R. CIV. P. 23(g)(1)(A). Class counsel must prosecute the case in the interest of the class rather than in counsel's own interest as lawyers seeking a share of any judgment or settlement. *See Creative Montessori Learning Ctrs. v. Ashford Gear LLC*, 662 F.3d 913, 917 (7th Cir. 2011). The Rule 23(g) analysis builds on the adequacy standards developed under Rule 23(a)(4). *See Molinari v. Fin. Asset Mgmt. Sys., Inc.*, No. 19-cv-00207, 2020 WL 4345418, at *8 (N.D. Ill. July 29, 2020).

Collective/Class Counsel satisfy all four Rule 23(g) criteria. With respect to *work in identifying and investigating claims*: Counsel conducted an in-depth pre-filing investigation into WellNow's pay practices, identified the three independent theories of liability (meal break deductions, automatic rounding, and bonus exclusion from the regular rate), identified Named Plaintiffs and additional putative class members, and drafted four iterations of the complaint over the course of this litigation. With respect to *experience*: Josephson Dunlap LLP, Anderson Alexander, PLLC, and Werman Salas P.C. are widely recognized wage and hour plaintiffs' firms

that have litigated and collectively resolved countless FLSA and state law class and collective wage actions in the Seventh Circuit and nationwide. *See* Ex. 2, ¶¶ 3–9.. With respect to *knowledge of the applicable law*: Counsel's submissions in this case—including the conditional certification motion, briefing WellNow's cross-motion to exclude arbitration-agreement employees, and discovery motion practice—demonstrate a thorough command of FLSA and state wage and hour law as applied in the Seventh Circuit. With respect to *resources committed*: Collective/Class Counsel have dedicated substantial time and expense to this case over more than three years, with no assurance of compensation, and will continue to commit the resources necessary to effectuate the settlement. *See id.* All four Rule 23(g) criteria are satisfied.

**E. The Proposed Notice Plan Should Be Approved**

Under Rule 23(e), the Court must "direct notice in a reasonable manner to all class members who would be bound by the proposal." FED. R. CIV. P. 23(e)(1). For class actions certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Id.* at R. 23(c)(2)(B). The proposed FLSA notice must also satisfy 29 U.S.C. § 216(b). Because this is a hybrid settlement, the proposed Notices must contain both the opt-in mechanism for FLSA Collective Members and the opt-out mechanism for Rule 23 Class Members. *See Ervin*, 632 F.3d at 975–76. The potential for confusion created by dual notice is not insurmountable, and it is not too much to require potential participants to make two binary choices. *Id.* at 975.

The proposed Notices (Exhibits B, C, D, and E to the Agreement) satisfy these requirements. The Agreement provides three tailored Notice documents: one for Class Members who are not Opt-in Plaintiffs (Exhibit B), one for Opt-in Plaintiffs who are also Class Members

(Exhibit C), and one for Opt-in Plaintiffs only (Exhibit D). Each Notice will be individualized with the recipient's estimated Allocated Amount. The Notices will be distributed via first-class mail and email. Exhibit E provides a Reminder Notice for Class Members who have not responded half-way through the claim period. The Notices clearly and concisely set forth in plain language all information required by Rule 23(c)(2)(B), including the right to appear through counsel, the process for submitting a Claim Form, the opt-out procedure, the objection procedure, the 63-day deadline, and the binding effect of the settlement on non-excluding members. *See Burton*, 2025 WL 3707927, at *8.

### F. The Court Should Schedule a Final Approval Hearing

If the Court enters a Preliminary Approval Order, Named Plaintiffs respectfully request that the Court schedule a Final Approval Hearing at which the Court will consider whether to grant final approval of the Agreement and award attorneys' fees and costs. Named Plaintiffs further respectfully request that the Court enter a briefing schedule by which the Parties must file any necessary motions.

## VI. CONCLUSION

For the foregoing reasons, Named Plaintiffs respectfully request that the Court (1) provisionally certify the FLSA Settlement Collective and Rule 23 Settlement Classes for settlement purposes only; (2) preliminarily approve the proposed Agreement; (3) appoint Named Plaintiffs as Representative Plaintiffs; (4) appoint Collective/Class Counsel under Rule 23(g); (5) approve the proposed Notices and notice plan; and (6) schedule a Final Approval Hearing. A proposed Preliminary Approval Order is attached as Exhibit 1(F).

Dated: July 28, 2026

Respectfully submitted,

*/s/ Michael A. Josephson*

Michael A. Josephson
Andrew W. Dunlap
**JOSEPHSON DUNLAP LLP**
5847 San Felipe, Suite 2400
Houston, Texas 77057
713-352-1100 – Telephone
713-352-3300 – Fax
mjosephson@mybackwages.com
adunlap@mybackwages.com

Douglas M. Werman
Maureen A. Salas
**WERMAN SALAS P.C.**
77 W. Washington St., Suite 1402
Chicago, Illinois 60602
312-419-1008 – Telephone
dwerman@flsalaw.com
msalas@flsalaw.com

Richard J. (Rex) Burch
**BRUCKNER BURCH PLLC**
5847 San Felipe Street, Ste. 2400
Houston, Texas 77057
713-877-8788 – Telephone
rburch@brucknerburch.com

William C. (Clif) Alexander
Austin W. Anderson
**ANDERSON ALEXANDER PLLC**
101 N. Shoreline Blvd., Suite 610
Corpus Christi, Texas 78401
361-452-1279 – Telephone
361-452-1284 – Fax
clif@a2xlaw.com
austin@a2xlaw.com

*Counsel for Plaintiff, Class, and Collective Members*

## CERTIFICATE OF SERVICE

I, the attorney, hereby certify that on July 28, 2026, I electronically filed the attached with the Clerk of the Court using the ECF system which will send such filing to all attorneys of record.

*/s/ Michael A. Josephson*
**Michael A. Josephson**